**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6086

MARIA ANGELICA GUZMAN CHAVEZ; DANIS FAUSTINO CASTRO
CASTRO; JOSE ALFONSO SERRANO COLOCHO,

Petitioners - Appellees,

and

CHRISTIAN FLORES ROMERO; WILBER A. RODRIGUEZ ZOMETA,

Petitioners,

v.

RUSSELL HOTT, Field Office Director, U.S. Immigration and Customs
Enforcement; DOJ EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;
RONALD D. VITIELLO, Acting Director, U.S. Immigration and Customs
Enforcement; WILLIAM P. BARR, Attorney General,

Respondents - Appellants,

and

BRENDA COOK, Court Administrator, Executive Office for Immigration Review,
Baltimore Immigration Court,

Respondent.

------------------------------

AMERICAN IMMIGRATION COUNCIL; AMERICAN IMMIGRATION
LAWYERS ASSOCIATION,

Amici Supporting Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:17-cv-00754-LMB-JFA)

---

**No. 18-6419**

---

ROGELIO AMILCAR CABRERA DIAZ; JENNRY FRANCISCO MORAN BARRERA; RODOLFO EDUARDO RIVERA FLAMENCO, on behalf of themselves and all others similarly situated,

Petitioners - Appellees,

v.

RUSSELL HOTT, Field Office Director, U.S. Immigration and Customs Enforcement; WILLIAM P. BARR, Attorney General,

Respondents - Appellants.

------------------------------

AMERICAN IMMIGRATION COUNCIL; AMERICAN IMMIGRATION LAWYERS ASSOCIATION,

Amici Supporting Appellees.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:17-cv-01405-LMB-MSN)

---

Argued: March 21, 2019                    Decided: October 10, 2019

---

Before FLOYD, HARRIS, and RICHARDSON, Circuit Judges.

---

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Floyd joined. Judge Richardson wrote a dissenting opinion.

---

**ARGUED:** Scott Grant Stewart, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Paul Whitfield Hughes, III, MAYER BROWN LLP, Washington, D.C., for Appellees. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, William C. Peachey, Director, Gisela A. Westwater, Assistant Director, Brian C. Ward, Senior Litigation Counsel, Lauren E. Fascett, Ari Nazarov, Civil Division, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Simon Yehuda Sandoval-Moshenberg, Rachel Colleen McFarland, LEGAL AID JUSTICE CENTER, Falls Church, Virginia; Mark Stevens, MURRAY OSORIO PLLC, Fairfax, Virginia; Adam Hudes, MAYER BROWN LLP, Washington, D.C., for Appellees. Trina Realmuto, Boston, Massachusetts, Karolina J. Walters, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amici Curiae.

PAMELA HARRIS, Circuit Judge:

The petitioners in this case are a class of noncitizens subject to reinstated removal orders, which generally are not open to challenge. The petitioners may, however, pursue withholding of removal if they have a reasonable fear of persecution or torture in the countries designated in their removal orders. Availing themselves of that right, these petitioners sought withholding of removal, and they are being detained by the government while they await the outcome of their "withholding-only" proceedings. The question before us is whether they have the right to individualized bond hearings that could lead to their release during those proceedings.

Answering that question requires that we determine the statutory authority under which the government detains noncitizens who seek withholding of removal after a prior removal order has been reinstated. The petitioners argue that their detention is governed by 8 U.S.C. § 1226, which authorizes detention "pending a decision on whether the alien is to be removed," and would allow them to seek release on bond and to make their case before an immigration judge. The government, on the other hand, points to 8 U.S.C. § 1231, which applies "when an alien is ordered removed" – as the petitioners were, the government says, by virtue of their reinstated removal orders – and makes that detention mandatory during a 90-day "removal period."

The district court granted summary judgment to the petitioners, holding that they are detained under § 1226 because a decision on removal remains "pending" until their withholding-only proceedings are complete. We agree with the district court's careful analysis of the relevant statutes and affirm its judgment.

4

# I.

## A.

For context, we begin with a brief description of the law governing reinstated removal orders and withholding-only proceedings under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

When a noncitizen who has been ordered removed from the United States reenters the country without authorization, the "prior order of removal is reinstated from its original date." *Id.* § 1231(a)(5). That reinstated order "is not subject to being reopened or reviewed," and the noncitizen "may not apply for any relief" but instead "shall be removed under the prior order." *Id.* Implementing regulations track the statute, providing that a noncitizen who unlawfully reenters after a prior removal order "shall be removed from the United States by reinstating the prior order" without any right to a hearing before an immigration judge. 8 C.F.R. § 241.8(a). In the great majority of cases, this process plays out exactly as contemplated, and a noncitizen facing a reinstated removal order is removed from the country without further legal proceedings.

But there is an exception to that rule, which produces the issue we face today. Consistent with our country's obligations under international law, Congress has provided that a noncitizen may not be removed to a country where she would be persecuted – that is, her "life or freedom . . . threatened" based on a protected ground, such as race or religion, 8 U.S.C. § 1231(b)(3)(A) – or tortured, *see* 8 U.S.C. § 1231 note (United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture); *see*

5

*also* 8 C.F.R. § 208.16(c) (implementing regulations).  Where an individual meets the high standard for showing that she will face persecution or torture in a given country, relief is mandatory, and the government must withhold removal to that country.  *See Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018); *Dankam v. Gonzales*, 495 F.3d 113, 115–16 (4th Cir. 2007).

Thus, as the district court explained, although a noncitizen "cannot otherwise challenge a reinstated removal order, he can seek protection from having that order executed to a particular country by initiating a withholding-only proceeding." *Romero v. Evans*, 280 F. Supp. 3d 835, 843 (E.D. Va. 2017); *see Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006) ("[E]ven an alien subject to [a reinstated removal order] may seek withholding of removal.").  Those proceedings ensure that removal complies with the limited statutory restrictions outlined above; if a claim is successful, it bars the government from removing an individual only to the specific country designated in the removal order. *See* 8 C.F.R. § 208.31.  A grant of withholding of removal with respect to one country does not preclude the government from removing a noncitizen to a third country, *see id.* § 208.16(f), nor affect a noncitizen's status as a removable individual, *see id.* § 208.2(c)(2)–(3).

The process works as follows.  When a noncitizen subject to a reinstated removal order expresses a fear of persecution or torture in the country designated on the order, an asylum officer conducts a screening interview to make a "reasonable fear" determination. *Id.* § 208.31(b).  If the asylum officer identifies a "reasonable possibility" of torture or persecution in the designated country, then the noncitizen is permitted to apply for

6

withholding of removal. *See id.* § 208.31(c), (e). At that point, the case goes to an immigration judge for an administrative hearing to determine whether the noncitizen can meet her burden of establishing eligibility for withholding of removal. *Id.* § 208.31(e). The noncitizen may appeal the immigration judge's determination to the Board of Immigration Appeals, *id.*, and the Board's decision is subject to judicial review, 8 U.S.C. § 1252(a)(1), (a)(4). Throughout, the only issue that may be raised is eligibility for withholding of removal; the underlying (and now reinstated) removal order is not subject to collateral attack during these "withholding-only" proceedings. *See* 8 C.F.R. § 208.2(c)(3)(i).[1]

## B.

### 1.

We turn now to the facts underlying this appeal, which are similar for each petitioner and may be sketched out briefly. Each petitioner was removed from the United States pursuant to an order of removal. On their return to their designated countries of removal, the petitioners allege, they were confronted with persecution or torture, or threats of persecution or torture that in several cases included death threats. Fearing for their safety,

---

[1] We use "withholding-only" proceedings and "withholding of removal" to encompass three distinct forms of relief: persecution-based withholding of removal under the INA, *see* 8 C.F.R. § 1208.16(b); torture-based withholding of removal under the Convention Against Torture, *see id.* § 1208.16(c); and torture-based deferral of removal under the Convention, *see id.* § 1208.17. The details of these forms of relief vary, but not in ways material to the issues before us.

the petitioners returned to the United States, reentering without authorization and despite their prior removal orders.

When the government discovered the petitioners' presence, their original removal orders were reinstated under 8 U.S.C. § 1231(a)(5). As noted above, those orders are "not subject to being reopened or reviewed," *id.*, so the petitioners could not challenge their underlying removability. But they did initiate the withholding-only process by expressing fear of persecution or torture in their native countries, designated as their countries of removal. In every case, the asylum officer, after an initial screening interview, found that the petitioner had a "reasonable fear" of persecution or torture. Accordingly, the petitioners were placed in withholding-only proceedings before immigration judges.

Although some of the petitioners initially were granted supervised release, all ultimately were detained by the government.

2.

This case arose out of a dispute over whether the petitioners could seek release on bond – and do so in hearings before immigration judges – while their withholding-only proceedings were pending. The government took the position that they could not, because they were subject to mandatory detention under 8 U.S.C. § 1231, and bond hearings were denied.

Two sets of petitioners then filed habeas petitions in the same district court in Virginia. Each sought a declaration that 8 U.S.C. § 1226, rather than 8 U.S.C. § 1231, governs their detention, and an injunction ordering individualized bond hearings consistent with § 1226. The second set of petitioners also moved to certify a Virginia-wide class of

8

individuals detained during withholding-only proceedings. The district court certified the class, and that decision is unchallenged on appeal.

In November 2017, the district court entered summary judgment in favor of the first set of petitioners and ordered the requested relief. *See Romero v. Evans*, 280 F. Supp. 3d 835 (E.D. Va. 2017).[2] The district court began its merits analysis by identifying the statutory issue at the heart of this case. According to the petitioners, they were being detained under 8 U.S.C. § 1226, which provides for detention "pending a decision on whether the alien is to be removed from the United States" and, critically, allows for discretionary release on bond. 8 U.S.C. § 1226(a). But the government pointed to a different statute – 8 U.S.C. § 1231 – which applies "when an alien is ordered removed" and provides for *mandatory* detention during a 90-day "removal period" within which the noncitizen "shall" be removed. 8 U.S.C. § 1231(a)(1)(A), (a)(2). So the "deceptively simple question" in this case, the court explained, is this: Are the petitioners – subject to reinstated removal orders, but with pending claims for withholding of removal – "detained under 8 U.S.C. § 1226[] or under 8 U.S.C. § 1231?" *Romero*, 280 F. Supp. 3d at 846.

The answer, the district court concluded, is § 1226, which by plain terms covers detention when a "decision on whether the alien is to be removed from the United States" is "pending." *Id.* (quoting 8 U.S.C. § 1226(a)). "[T]his text governs petitioners' detention

---

[2] The district court issued a separate decision on the second petition before it, relying on its reasoning in *Romero*. *See Diaz v. Hott*, 297 F. Supp. 3d 618 (E.D. Va. 2018). Both those decisions are before us now on appeal. Because the district court first spelled out its analysis in *Romero*, we focus on that decision here.

because until withholding-only proceedings are complete, a decision has not been made on whether they will in fact be removed from the United States." *Id.* The court recognized that by virtue of their reinstated removal orders, the petitioners' "removability" already had been determined. *Id.* But the text of § 1226 is concerned with the "more concrete determination of whether petitioners will actually be removed," the court reasoned, and that decision "remains 'pending'" during withholding-only proceedings and "until the government determines that there is a country to which [the] petitioners can legally be removed." *Id.* (quoting 8 U.S.C. § 1226(a)).

That conclusion, the court went on, is reinforced by the structure of § 1231 – the provision mandating detention during a 90-day "removal period." Under § 1231, the "removal period" begins on the latest of three dates: the date a removal order becomes "administratively final," the date any judicial stay of a removal order is lifted, or the date on which a noncitizen is released from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B)(i)–(iii); *see also Romero*, 280 F. Supp. 3d at 846. Each of those triggers, the court explained, relates to "a different legal impediment to actual removal": the administrative process is not complete, or a judicial stay prevents removal, or a noncitizen is in criminal custody and so cannot be removed. *Romero*, 280 F. Supp. 3d at 846. Under § 1231, in other words, it is not enough that the agency "may have already determined that the noncitizen is, like petitioners here, removable." *Id.* Instead, § 1231 does not come into play until the government has "the present and final legal authority to actually execute that order of removal." *Id.*

10

That reading, the court determined, also makes sense of the standard 90-day removal period during which the government "shall" remove a noncitizen from the country, 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided . . . when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."). Limiting that period to 90 days is reasonable if § 1231 is intended to "govern only the final logistical period, in which the government has actual authority to remove the alien and need only schedule and execute the deportation." *Romero*, 280 F. Supp. 3d at 846. Noncitizens like the petitioners in this case, on the other hand, are detained during withholding-only proceedings that "typically far exceed 90 days." *Id.* at 847.

The court rejected the government's argument that a reinstated removal order, because it is "not subject to being reopened or reviewed," 8 U.S.C. § 1231(a)(5), is an "administratively final" order of removal that triggers § 1231's 90-day removal period and mandatory detention provision, *see id.* § 1231(a)(1)(B)(i) (listing "date the order of removal becomes administratively final" as potential start of removal period). For purposes of judicial review, the court explained, it is widely accepted that a reinstated removal order is not final and reviewable until *after* the adjudication of any withholding applications. The court found no reason to adopt a "bifurcated definition of finality" that would render the same orders "administratively final" under § 1231 *before* withholding-only proceedings conclude. *Romero*, 280 F. Supp. 3d at 847 (internal quotation marks omitted). Nor are the petitioners' removal orders "final" under general administrative law principles, the court reasoned, because the agency's "decisionmaking process" has yet to

11

be consummated while withholding-only proceedings are pending before an immigration court. *Id.*

Having concluded that § 1226, rather than § 1231, provides the statutory authority for the petitioners' detention, the court granted the petitioners' requested relief in two separate decisions, ordering the government to provide individualized bond hearings under § 1226. The government timely appealed both cases, which we consolidated for purposes of appeal.

## II.

This appeal requires that we resolve a single question of statutory interpretation: whether § 1226 or § 1231 governs the petitioners' detention and, specifically, their entitlement to individualized bond hearings. We review that legal question de novo. *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 242–43 (4th Cir. 2009).

The courts of appeals are divided on this question. *Compare Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016) (holding that § 1226 applies), *with Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208 (3d Cir. 2018), *and Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017) (both holding that § 1231 applies). "The statutory scheme governing the [petitioners'] detention . . . is not a model of clarity," *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (analyzing same provisions), and as the district court recognized, there are arguments of at least "some force" on both sides of the issue, *Romero*, 280 F. Supp. 3d at 846. But reading the two provisions together, we conclude, like the district court and the Second Circuit, that it is § 1226 that governs the petitioners' detention,

12

entitling them to bond hearings. Section 1231's "removal period" – and with it, the requirement of mandatory detention – begins only when the government acquires the "present and final legal authority" to execute a removal order, *id.*, and so long as withholding-only proceedings are pending, the government lacks that authority.

**A.**

We begin with a description of the two statutory sections at issue and, in particular, their provisions regarding release on bond. Like the parties and the district court, we have used general terms in framing the question as whether § 1226 or § 1231 applies to the petitioners. But that is shorthand for the parties' more specific dispute: whether the petitioners are entitled to individualized bond hearings before immigration judges, which might lead to their release during the pendency of their withholding-only proceedings. Our focus here is on the provisions bearing directly on that question.

Section 1226, as noted above, authorizes the arrest and detention of noncitizens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). For certain individuals with criminal histories, that detention is mandatory. *See id.* § 1226(c) (providing, with limited exceptions, for mandatory detention of noncitizens who have committed specified criminal offenses). But for all other noncitizens, detention under § 1226 is not mandatory; instead, § 1226 permits discretionary release on bond or conditional parole. *Id.* § 1226(a)(1)–(2).[3]

---

[3] Specifically, § 1226(a) provides in relevant part:

(a) Arrest, detention, and release

Agency regulations set out the procedures governing discretionary release under § 1226. *See* 8 C.F.R. § 236.1. Most important here, a noncitizen detained under § 1226 is entitled to an individualized hearing before an immigration judge to determine whether continued detention is necessary while immigration proceedings continue. *See id.* § 236.1(d)(1). At that hearing, the noncitizen bears the burden of showing that her release would pose no danger to the public and that she is likely to appear for future proceedings. *Id.* § 236.1(c)(8). And even if she makes that showing, agency officials retain broad discretion in deciding whether to grant release and on what conditions. *See id.*

Section 1231, on the other hand, authorizes the detention of a noncitizen who "is ordered removed," 8 U.S.C. § 1231(a)(1)(A), and it makes that detention mandatory during a statutory "removal period," *id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)). The "removal period" is defined as "a period of 90 days" during which "the Attorney General *shall* remove the alien from the

---

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) ["Detention of criminal aliens"] and pending such decision, the Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B) conditional parole . . . .

8 U.S.C. § 1226(a).

United States." *Id.* § 1231(a)(1)(A) (emphasis added).[4] That 90-day window for removal begins on the latest of three dates:  the date the removal order becomes "administratively final"; the date of a reviewing court's final order, if that court has issued a stay of removal; or the date on which a noncitizen subject to removal is released from non-immigration detention.  *Id.* § 1231(a)(1)(B)(i)–(iii).[5]

---

[4] The removal period may be extended beyond 90 days in certain cases involving a noncitizen's refusal to cooperate with efforts to arrange for removal.  *See* 8 U.S.C. § 1231(a)(1)(C).   There is no indication that this exception applies here, and the government has not argued otherwise.  Accordingly, we refer throughout to a 90-day removal period.

[5] The full text of the relevant portion of § 1231 provides:

(a)  Detention, release, and removal of aliens ordered removed

(1)  Removal period

(A) In general

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

(B) Beginning of period

The removal period begins on the latest of the following:

(i)  The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

15

Again, during that 90-day period, detention is mandatory. Once the 90-day window closes, however, a noncitizen who has not been removed normally is subject to supervised release. *Id.* § 1231(a)(3); *see also* 8 C.F.R. § 241.5 (governing release on bond after expiration of removal period). Detention beyond the 90-day removal period is governed by § 1231(a)(6), which allows for the discretionary extension of detention in certain cases, including those in which the government determines that a noncitizen is a "risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6) (certain noncitizens "*may* be detained beyond the removal period and, if released, shall be subject to [supervised release]") (emphasis added); *see also Zadvydas v. Davis*, 533 U.S. 678, 683–84 (2001) (discussing post-removal-period detention provisions).[6] But – critically for this case – while detainees seeking release on bond under § 1226 are entitled to individualized hearings before immigration judges, such hearings are not afforded in

---

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(A)–(B).

[6] The dissent suggests that the petitioners may have been detained under a different portion of § 1231(a)(6), providing for discretionary detention of noncitizens "inadmissible under section 1182." Section 1182(a)(9), to which the dissent points, governs certain noncitizens previously removed who "seek[] admission" to the United States. 8 U.S.C. § 1182(a)(9)(A)(i)-(ii). It is not clear to us that this provision applies to noncitizens in withholding-only proceedings, who may not seek any substantive change in their immigration status but only "protection from having [a prior removal order] executed to a particular country," *Romero*, 280 F. Supp. 3d at 843. In any event, there is no dispute that all post-removal-period detention under § 1231(a)(6), whatever the precise basis, is discretionary and not mandatory.

16

connection with § 1231(a)(6) determinations. *See* 8 C.F.R. § 241.4 (establishing custody review procedures under § 1231(a)(6)); *see also Zadvydas*, 533 U.S. at 683–84 (describing procedures); *Prieto-Romero*, 534 F.3d at 1057 (whether § 1226 or § 1231 governs "can affect whether . . . detention is mandatory or discretionary, as well as the kind of review process available").[7]

In short, if the petitioners are detained "pending a decision on whether [they are] to be removed from the United States" under § 1226, then they are eligible to seek discretionary release during their withholding-only proceedings and to do so before immigration judges in individualized bond hearings. If, on the other hand, § 1231's 90-day "removal period" governs, then they are not entitled to those hearings – either because their detention is mandatory (if the 90-day window has not yet closed) or (if it has) because the government may extend their detention beyond the removal period under § 1231(a)(6) without affording them a hearing.[8]

_____

[7] Even under § 1231, however, there is an agency process to ensure compliance with the due process rights of noncitizens, providing for conditional release when "there is no significant likelihood of removal" in the "reasonably foreseeable future." 8 C.F.R. § 241.13(a); *see also Zadvydas*, 533 U.S. at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The petitioners here have not raised *Zadvydas*-based claims.

[8] Before the district court, the government argued that the petitioners are subject to mandatory detention under 8 U.S.C. § 1231. But if, as the government also contends, each petitioner's 90-day removal period was triggered upon reinstatement of her removal order, then that removal period has come and gone, and with it, § 1231(a)(2)'s mandatory detention provision. Accordingly, we understand the government's current position to be that the petitioners are detained under § 1231(a)(6), which makes detention discretionary but does not provide for individualized hearings. Though the government was unable to

17

**B.**

The government's central argument on appeal can be summarized like this: Each of the petitioners is subject to a reinstated removal order which may not be "reopened or reviewed," 8 U.S.C. § 1231(a)(5). It follows, according to the government, that there is no "pending" decision on removability under § 1226(a). Instead, the petitioners already have been "ordered removed" within the meaning of § 1231(a), and those removal orders are "administratively final," triggering the 90-day "removal period" under § 1231(a)(1)(B). It is thus § 1231's detention provisions, and not those of § 1226, that govern the petitioners' claim for individualized bond hearings. That is a perfectly straightforward argument, and as noted above, it has been adopted by some of our sister circuits.

We are persuaded, however, that the district court's reading of the two statutory provisions – also adopted by a sister circuit – is the better one. That reading fully effectuates the plain text of the provisions and also ensures that § 1226 and § 1231 fit together to form a workable statutory framework: Before the government has the actual authority to remove a noncitizen from the country, § 1226 applies; once the government has that authority, § 1231 governs. Because the government lacks the authority to "actually execute . . . order[s] of removal" while withholding-only proceedings are ongoing, *Romero*, 280 F. Supp. 3d at 846, the petitioners are detained under § 1226.

1.

clarify this point at argument, it pointed to no other source of authority for the petitioners' detention once the 90-day removal period has expired.

18

We begin, like the district court, with the plain text of § 1226, which authorizes detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). There is no question that the petitioners are legally "removable" from the United States; they are subject to reinstated and unreviewable removal orders, and may not relitigate their removability. *See id.* § 1231(a)(5). But at the same time, thanks to the exception allowing for withholding-only relief notwithstanding reinstated removal orders, there are now "pending" immigration proceedings that must be concluded before the petitioners may be removed. And we agree with the district court that the language of § 1226(a) is better read to focus on this "more concrete determination," *Romero*, 280 F. Supp. 3d at 846. Subsection 1226(a) does not reference legal "removability," or use other language that captures "whether the alien is *theoretically* removable." *Guerra*, 831 F.3d at 62 (emphasis added). Instead, the statute applies "pending a decision on whether the alien *is to be removed*," 8 U.S.C. § 1226(a) (emphasis added), invoking the practical question of whether the government has the authority to execute a removal. As the Second Circuit explained, "[a]n alien subject to a reinstated removal order is clearly removable, but the purpose of withholding-only proceedings is to determine precisely whether 'the alien is to be removed from the United States.'" *Guerra*, 831 F.3d at 62 (quoting 8 U.S.C. § 1226(a)).

That reading is confirmed by the text and structure of § 1231. The government sees it differently, emphasizing that the introductory language of § 1231(a)(1)(A) refers to "an alien [who] is ordered removed," and arguing that a noncitizen subject to a reinstated removal order by definition has been "ordered removed." But whether the petitioners are

19

a match for this introductory phrase does not control the outcome here. As explained above, the issue in this case is not whether § 1231 applies in the abstract; it is whether § 1231's detention provisions govern the petitioners. And under § 1231, those detention provisions are triggered not when "an alien is ordered removed," as the government would have it, but only when the "removal period" begins. *See* 8 U.S.C. § 1231(a)(2) (providing for mandatory detention "[d]uring the removal period"); *id.* § 1231(a)(6) (providing for discretionary detention "beyond the removal period").

So our focus is on § 1231's "removal period," and that period does not begin until the government has the actual legal authority to remove a noncitizen from the country. It is only when all of three potential legal impediments to removal have been overcome, that is – the removal order has become "administratively final," any court-issued stay of removal has been lifted, and the noncitizen has been released from any non-immigration custody so that there is jurisdiction to remove – that the 90 days of the removal period start to run. *Id.* § 1231(a)(1)(B)(i)–(iii) (listing three conditions that must be met before removal period starts). As the district court explained, those preconditions are concerned with "legal impediment[s] to actual removal" rather than initial determinations of removability. *Romero*, 280 F. Supp. 3d at 846. A noncitizen in criminal custody, for instance, may already have been determined (and finally so) to be "removable." Nevertheless, the 90-day removal period will not begin, and § 1231's detention provisions will not apply, until that noncitizen is released from non-immigration custody so that immigration authorities will have jurisdiction to execute the removal order. *See id.*; *see also* 8 U.S.C. § 1231(a)(1)(B)(iii).

20

Thus, the text and structure of § 1226 and § 1231 align:  Section 1226 applies when there is still "pending" a legal determination that must be made before a noncitizen may be removed; and once there are no remaining legal impediments to removal, § 1231's 90-day removal period begins.  That result also is consistent with the nature and duration of the removal period itself.  As the Second Circuit explained, § 1231 is concerned primarily not with detention at all, but with defining the 90-day removal period within which the government *must* remove a noncitizen.  *Guerra*, 831 F.3d at 62–63 (government "shall remove the alien" during removal period (quoting 8 U.S.C. § 1231(a))).  But at the same time, if a noncitizen prevails on a withholding-only claim, then she may *not* be removed to the country designated on the removal order.  *See Salgado-Sosa*, 882 F.3d at 456 (persecution-based withholding of removal is mandatory when noncitizen makes necessary showing); *Dankam*, 495 F.3d at 115–16 (same for torture-based withholding of removal).  Reading § 1226, rather than § 1231, to apply to noncitizens in withholding-only proceedings is "more logical," *Guerra*, 831 F.3d at 63, than an alternative that could leave agency officials caught between competing mandates.

Similarly, the fact that the removal period is limited to 90 days strongly suggests that it is intended to apply only when all legal barriers to removal are cleared away, leaving just the "travel, consular, and various other administrative arrangements that are necessary" to execute a removal order, *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008) (explaining that purpose of 90-day removal period is to "afford the government a reasonable amount of time" for administrative arrangements associated with execution of removal order).  As the district court reasoned, the 90-day limitation "makes sense if the

21

removal period is only meant to govern the final logistical steps of physically removing an alien." *Romero*, 280 F. Supp. 3d at 846. But "it is obvious that withholding-only proceedings take substantially longer than 90 days." *Id.* at 847. The government does not dispute this common-sense assessment, and we have no reason to doubt it: Withholding-only proceedings are lengthy, beginning, as here, with a screening interview by an asylum officer, followed by referral to an immigration judge for an administrative hearing, a subsequent decision by that judge, and the opportunity for appeal to the Board of Immigration Appeals. *See* 8 C.F.R. § 208.31.

So if § 1231's removal period – and its associated detention provisions – apply to noncitizens in withholding-only proceedings, then agency officials regularly and predictably will find themselves unable to meet the 90-day removal deadline. That does not mean that § 1231 cannot bear that meaning; as the government argues, the statute expressly contemplates that there will be at least some instances in which the removal process exceeds 90 days. *See* 8 U.S.C. § 1231(a)(6) (providing in certain cases for detention "beyond the removal period"). But absent a clearer textual command, we are most reluctant to adopt a construction of § 1231 that in an entire class of cases will put government officials – routinely and completely foreseeably – in dereliction of their statutory duties.

The result is that until withholding-only proceedings conclude, the removal period has not begun and § 1231's detention provisions do not apply. Instead, the decision regarding whether petitioners are "to be removed" remains "pending," and § 1226 governs.

2.

22

The government has a two-fold response to this understanding of § 1226 and § 1231 and the way in which they work together. First, the government argues, it misconceives the nature of withholding-only proceedings and relief. Section 1226 applies only when there is a pending decision on *whether* the alien is to be removed, the government emphasizes, whereas withholding-only proceedings are about the *where* of removal: Removability is not and may not be contested, and all that remains "pending" is a determination of the specific countries to which the petitioners will be removed. And while § 1226 by terms does not apply to the petitioners, the government finishes, § 1231 does, because the petitioners' reinstated removal orders are "administratively final" and thus trigger the removal period under § 1231(a)(1)(B)(i). We disagree.

The government's first argument centers on the limited nature of relief available in withholding-only proceedings. As the government emphasizes and we explain above, withholding-only proceedings are country-specific: A grant of withholding to a petitioner would mean only that the government could not remove that petitioner to the country designated on her order of removal, usually the country from which she arrived. It would not preclude the government from taking steps to remove the petitioner to some third country, in which she would not face persecution or torture. *See* 8 C.F.R. § 208.16(f); *see also* 8 U.S.C. § 1231(b)(2) (describing alternative countries for removal). It follows, the government argues – and two circuits have agreed – that while withholding-only proceedings are ongoing, the only question "pending" is to *where* and not "*whether* the alien is to be removed," 8 U.S.C. § 1226(a) (emphasis added). *See Guerrero-Sanchez*, 905 F.3d at 216 ("[T]he decision that was before the Immigration Judge [in withholding-only

23

proceedings] was not whether [the noncitizen] should be removed from the United States – as is required to trigger § 1226(a) – but rather, whether he may be removed to Mexico, i.e., *to where* he should be removed." (internal quotation marks omitted)); *Padilla-Ramirez*, 882 F.3d at 832 ("This narrow question of *to where* an alien may be removed is distinct from the broader question of *whether* the alien may be removed.").

We do not think the "whether" and "where" questions can be separated so cleanly. Instead, we agree with the district court that both legally and practically, the two are intertwined: Because the government's removal authority turns on the ultimate identification of an appropriate country for removal, "it is not clear" while withholding-only proceedings are pending "that petitioners are in fact 'to be removed' from the United States." *Romero*, 280 F. Supp. 3d at 848 (quoting 8 U.S.C. § 1226(a)). First, as the district court explained, the provisions allowing for removal to third countries put "sharp limitations" on the countries that may be designated for such removal. *Id.* (internal quotation marks omitted); *see, e.g.*, 8 U.S.C. § 1231(b)(2)(D) (allowing for removal to "country of which alien is a subject, national, or citizen," but only with permission of that country); *id.* § 1231(b)(2)(E) (allowing for removal to countries from which noncitizen was admitted or in which noncitizen resided or was born). And as a practical matter, the government generally cannot "simply *sua sponte* deport an alien to a country where he or she does not have citizenship; instead, the government must typically get permission to deport from the third country." *Romero*, 280 F. Supp. 3d at 848; *see also* 8 U.S.C. § 1231(b)(2)(E)(vii) (where no other alternative country is available, government may remove to a "country whose government will accept the alien into that country");

24

*Zadvydas*, 533 U.S. at 684–86 (explaining that detainees had not been removed because their designated countries refused to accept them or lacked a repatriation treaty with the United States). The bottom line, according to the district court, is that the government has not shown that there are "any countries that meet those limitations for petitioners" – that is, third countries to which they could be removed were they to succeed in their withholding-only proceedings. *Romero*, 280 F. Supp. 3d at 848.[9]

Second, the prohibition on removal to a country where a noncitizen would face persecution or torture remains absolute. And precisely because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country. *See Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998). At a minimum, as the district court explained, "third-country removal would require additional proceedings," including the opportunity for a hearing – which means that the government lacks the "present and final legal authority" to remove the petitioners during their initial withholding-only proceedings. *Romero*, 280 F. Supp. 3d at 846, 847. Unless and until the government can ensure that third-country removal would comply with the statutory torture- and persecution-based limits on its removal authority, in other words, "it is not clear . . . that petitioners are in fact

---

[9] Given the restrictions on third-country removal, that is not surprising. Other courts have suggested that noncitizens who prevail in withholding-only proceedings are only very rarely removed to third countries. *See Kumarasamy v. Att'y Gen. of U.S.*, 453 F.3d 169, 171 n.1 (3d Cir. 2006).

'to be removed' from the United States." *Id.* at 848. That determination remains "pending," and § 1226(a) applies.

The government's second argument focuses not on § 1226 but on § 1231, and specifically on the subsection of § 1231 that makes an "administratively final" order of removal a trigger for the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(B)(i). According to the government, a reinstated removal order, which cannot be "reopened or reviewed," *id.* § 1231(a)(5), constitutes an "administratively final" order that initiates § 1231's 90-day removal period and related detention provisions. *See Guerrero-Sanchez*, 905 F.3d at 217; *Padilla-Ramirez*, 882 F.3d at 831–32. Like the district court and the Second Circuit, we disagree.

To be clear, we do not doubt that in most cases, a reinstated removal order will qualify as "administratively final" and – so long as there is no other legal impediment to removal, *see* 8 U.S.C. § 1231(a)(1)(B)(ii) (judicial stay); *id.* § 1231(a)(1)(B)(iii) (non-immigration detention) – will start the § 1231 removal-period clock, giving agency officials 90 days to make travel and administrative arrangements. That would explain why Congress located § 1231(a)(5), governing reinstatement of removal orders, in the same provision that establishes the 90-day removal period. In the ordinary case, reinstatement of a removal order, which does not allow for review of the underlying removal determination, will "mark the consummation of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted) (defining "finality" for administrative law purposes), leaving for the 90-day window only administrative execution of the removal order.

26

But the question here is about the exceptional case, not the ordinary case: The small percentage of cases in which – notwithstanding § 1231(a)(5)'s general bar against relief from reinstated removal orders – a noncitizen with a "reasonable fear" of persecution or torture is permitted to apply for withholding of removal. In those cases, "the reinstated removal order is not final in the usual legal sense because it cannot be executed until further agency proceedings are complete." *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185 (10th Cir. 2015). As the district court explained, "[i]n agency law, finality is generally achieved when an action both 'mark[s] the consummation of the agency's decisionmaking process' and also determines legal rights or obligations." *Romero*, 280 F. Supp. 3d at 847 (quoting *Bennett*, 520 U.S. at 177–78). The petitioners' legal status as "removable" already has been determined. But the decisionmaking process in their cases remains "ongoing – *i.e.*, it has *not* been consummated – as the agency is still determining whether petitioners will be granted withholding of removal or will be removed." *Id.* (emphasis added); *see also Guerra*, 831 F.3d at 63 (treating reinstated removal orders as "final" under § 1231 during withholding-only proceedings "runs counter to principles of administrative law which counsel that to be final, an agency action must mark the consummation of the agency's decisionmaking process" (internal quotation marks omitted)).

Consistent with this general definition of administrative finality, courts routinely have held – and the government has agreed, *see Luna-Garcia*, 777 F.3d at 1183 – that a reinstated order of removal is not "final" for purposes of judicial review until the agency completes adjudication of a noncitizen's request for withholding of removal. *See Romero*, 280 F. Supp. 3d at 847; *see also Guerra*, 831 F.3d at 63; *Ponce-Osorio v. Johnson*, 824

27

F.3d 502, 505–06 (5th Cir. 2016) (per curiam); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012). Under 8 U.S.C. § 1252, judicial review is limited to "final order[s] of removal," 8 U.S.C. § 1252(a)(1), and must be sought no more than 30 days after the date of a "final order," *id.* § 1252(b)(1). In holding that a reinstated removal order is not "final" under § 1252 until after the completion of withholding-only proceedings, some courts have expressed concern that the 30-day deadline otherwise would make it impossible to timely petition for review of those proceedings. *See, e.g.*, *Ortiz-Alfaro*, 694 F.3d at 958. As the Tenth Circuit has explained, however, those decisions also rest on the more general administrative-law proposition that an order is not "final" when there are pending applications for relief. *See Luna-Garcia*, 777 F.3d at 1186; *see also Ortiz-Alfaro*, 694 F.3d at 958 (noting that holding is consistent with cases determining finality in "different contexts than the one presented here").

The government does not dispute that a removal order is "final" under § 1252's judicial review provisions only when withholding-only proceedings end.[10] Instead, it

---

[10] The dissent, unlike the government, does suggest that a reinstated removal order becomes "final" for purposes of judicial review under § 1252 before withholding-only proceedings conclude, which presumably would render the withholding-only determination nonreviewable. But as the district court explained, *Mejia v. Sessions*, 866 F.3d 573 (4th Cir. 2017), on which the dissent relies, applied § 1252's finality provision and time bar to an underlying removal order, not to a withholding-only determination. *Romero*, 280 F. Supp. 3d at 847 n.23; *see Mejia*, 866 F.3d at 588-89 (declining to "allow[] a challenge to an underlying removal order any time a reinstated order is issued"). *Mejia* did not address finality in the context of a challenge to withholding-only proceedings, and so had no occasion to consider the line of cases described above. Without more, we do not read *Mejia* as putting us in conflict with the circuits that have held, in agreement with the government, that when a noncitizen seeks review of a withholding-only determination, the

argues that we should adopt a "bifurcated definition of finality," *Guerra*, 831 F.3d at 63, under which a reinstated removal order is simultaneously final for purposes of detention under § 1231 and not final for purposes of judicial review under § 1252. The district court, like the Second Circuit, *see id.*, rejected that proposal, and so do we. It is possible, of course, for the same word – here, "final" – to mean two different things in two different parts of this statute; context matters, and not all the arguments that support the case law on finality under § 1252 translate directly to § 1231. *See Padilla-Ramirez*, 882 F.3d at 833–34 (adopting government's bifurcated definition of "finality"). But the presumption is that finality should mean the same thing in both these provisions, *see Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004), making for a far more workable statutory structure. And as described above, we find no clear indication that Congress intended § 1231 to apply while withholding-only proceedings remain pending; indeed, we think the better reading is that § 1226 governs such cases. *Cf. id.* (explaining that presumption of same meaning "yields" to indications of contrary congressional intent (internal quotation marks omitted)). Without some compelling reason to do so, we decline to graft a two-tiered system of finality onto immigration cases involving withholding-only proceedings. *See Guerra*, 831 F.3d at 63 (because noncitizens with pending withholding-only proceedings clearly fall under § 1226 and not § 1231, court "need not create new principles parsing administrative

reinstated order of removal is not "final" for purposes of appellate review until withholding-only proceedings are completed.

29

finality").[11]

In addition to the two primary arguments addressed above, the government has a fallback position: Even if the text and structure of § 1226 and § 1231 do not make clear that the petitioners' detention is governed by § 1231, we should adopt that position as a matter of deference to reasonable agency regulations. Although the courts are divided, as we have discussed, on the ultimate merits of this dispute, there is one point on which they are unanimous: The regulations cited by the government do not actually specify which section – § 1226 or § 1231 – authorizes detention of noncitizens subject to reinstated removal orders who have been placed in withholding-only proceedings. *See Romero*, 280 F. Supp. 3d at 845 ("These regulations do not answer the question raised by petitioners."); *see also Guerrero-Sanchez*, 905 F.3d at 215 ("*Chevron* deference is inapplicable . . . because [the regulation] does not resolve the question of whether § 1226(a) or § 1231(a) governs [the petitioner's] detention."); *Padilla-Ramirez*, 882 F.3d at 831 ("This regulation therefore does not answer the question of *when* the removal period begins."); *Guerra*, 831

---

[11] The government also argues that the petitioners' reinstated removal orders are "administratively final" under § 1231(a)(1)(B)(i), triggering the 90-day removal period, by virtue of the INA's definitions provision, which makes a removal order "final" when it is affirmed by the Board of Immigration Appeals or the time for such review has passed. *See* 8 U.S.C. § 1101(a)(47)(B). But as even one court that otherwise agreed with the government has explained, that general definition has "limited utility in the context of reinstated removal orders" because the underlying removal order in most circumstances may *not* be reviewed by the Board of Immigration Appeals. *Padilla-Ramirez*, 882 F.3d at 831; *see also Luna-Garcia*, 777 F.3d at 1185. And because the same definition applies equally to the judicial review provision at § 1252 as it does to § 1231, one position that § 1101(a)(47)(B) clearly cannot support is the government's: that finality means something different under those two provisions.

F.3d at 63 ("The regulations [the government] cite[s], however, do not provide which section authorizes detention of aliens in [the petitioner's] position."). We agree. Because there are no regulations to which we could defer under *Chevron*, we must "conduct our own review of the statute." *Padilla-Ramirez*, 882 F.3d at 831.[12]

## III.

For the foregoing reasons, we agree with the district court that the relevant provisions of § 1226, rather than § 1231, govern the petitioners' detention, entitling the petitioners to individualized bond hearings. Accordingly, we affirm the district court's judgments.

Our holding does not, of course, guarantee the petitioners' release from custody. The petitioners must carry their burden of proving that they are eligible for conditional release, and agency officials enjoy broad discretion in making detention-related decisions. *See* 8 C.F.R. § 236.1(c)(8); *see also* 8 U.S.C. § 1226(a). All that is at issue in this appeal is whether the petitioners are entitled to make their case for release on bond to immigration

---

[12] The government also argues that this question was resolved by *Zadvydas v. Davis*, in which the Supreme Court addressed a challenge to indefinite post-removal-period detention under § 1231(a)(6). 533 U.S. at 682. In that case, the parties assumed, and the Court did not question, that § 1231(a)(6) governed the post-90-day detention of two noncitizens who had yet to be removed because their designated countries of removal (as well as alternative third countries) refused to accept them. *Id.* at 684–86. But unlike the petitioners here, those detainees never challenged their designated countries of removal, and never were placed in withholding-only proceedings; as a result, there never was any question that the government had the actual legal authority to remove them. *Zadvydas*, in other words, does not implicate the withholding-only proceedings and persecution- and torture-based restrictions on removal that are at the heart of this appeal.

judges in individualized hearings.  Like the district court and the Second Circuit, we find

that the statutory framework entitles them to that process.

*AFFIRMED*

RICHARDSON, Circuit Judge, dissenting:

This case presents a question of statutory interpretation. Are previously removed aliens, who are subject to a reinstated order of removal from the United States, entitled to a bond hearing when they seek withholding of removal? The answer turns on which provision of the Immigration and Nationality Act governs their detention. Section 1231 applies "when an alien is ordered removed" and provides no right to a bond hearing. On the other hand, § 1226 applies to an alien awaiting "a decision on whether the alien is to be removed" and permits the alien's release on bond after a hearing. The majority holds that § 1226 controls.

I respectfully dissent. Both the plain language and the structure of the Immigration and Nationality Act compel the conclusion that § 1231, not § 1226, governs the detention of aliens with reinstated orders of removal. Petitioners are thus not entitled to a bond hearing while they seek withholding of removal under their reinstated orders of removal.

## I.
### A.

Petitioners are aliens previously ordered removed from the United States. After their removal, each returned illegally. When they were later located by immigration authorities, each "prior order of removal [was] reinstated from its original date." 8 U.S.C. § 1231(a)(5). Once reinstated, the removal order "is not subject to being reopened or reviewed, [and] the alien is not eligible and may not apply for any relief under [the Immigration and Nationality Act]." *Id.*; *see Fernandez-Vargas v. Gonzales*, 548 U.S. 30,

33

35 (2006). Instead, "the alien shall be removed under the prior order." § 1231(a)(5). Thus, Petitioners have, once and for all, been ordered removed.

Section 1231(a) governs the "[d]etention, release, and removal of aliens ordered removed." It provides for a ninety-day "removal period," during which "the Attorney General *shall* detain" an alien and then "*shall* remove the alien from the United States." §§ 1231(a)(1)(A), (a)(2) (emphasis added). The "removal period" begins on the "date the *order of removal* becomes administratively final," unless the alien is confined for non-immigration reasons or the "removal order" is stayed during judicial review. § 1231(a)(1)(B) (emphasis added).

Two paths may extend detention beyond ninety days. First, § 1231(a)(1)(C) requires that the "removal period shall be extended . . . and the alien may remain in detention" if the alien "acts to prevent the alien's removal subject to an order of removal."[1] Second, even where the removal period is not extended, § 1231(a)(6) authorizes continued detention: an alien ordered removed "may be detained beyond the removal period" if the alien is either (i) "inadmissible" under § 1182 or (ii) found to be a risk to the community or unlikely to comply with the removal order. § 1231(a)(6).

But extended detention is not indefinite detention. The Supreme Court has held that under § 1231(a)(6) "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

---

[1] Section 1231(a)(1)(C)'s language suggests that seeking withholding of removal qualifies as an "act[] to prevent the alien's removal," which would extend the removal period. The parties have not argued this issue, and it is left for a future case.

34

*Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  So an alien detained beyond the removal period may seek release from custody by showing that "there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  8 C.F.R. § 241.13(a); *see also Zadvydas*, 533 U.S. at 701.  In other words, an alien granted withholding of removal to his native country can seek release from detention if no substitute country can be found.  Despite this potential avenue for relief, Petitioners chose not to make a claim under *Zadvydas*.  J.A. 210 n.8.

As long as removal remains likely in the foreseeable future, § 1231's commands easily apply to an alien who illegally returns to the United States after being removed.  The alien's prior order of removal must be "reinstated from its original date" under § 1231(a)(5).  This reinstated order may not be challenged.  *Id.*  Inside the removal period, the alien must be detained and removed from the United States.  §§ 1231(a)(1)(A), (a)(2).  Outside the removal period, the returning alien is inadmissible and may be detained beyond that period.  § 1231(a)(6).

## B.

Despite the seemingly "absolute terms" of § 1231's bar on applying for relief from the reinstated removal order and the mandate to remove the alien, the Supreme Court has recognized that aliens like Petitioners may seek withholding of removal under § 1231(b)(3)(A).  *Fernandez-Vargas*, 548 U.S. at 35 n.4.  Section 1231(b)(3)(A) bars removing an alien to a particular country if the alien's "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  *See also* 8 C.F.R. § 208.17 (deferral of removal under

the Convention Against Torture). This limitation on how the order of removal is executed provides for the withholding proceeding that Petitioners have invoked.

This withholding proceeding permits an alien to seek protection from being removed to a particular country. 8 C.F.R. § 1208.31; Majority Op. at 6. The alien cannot attack a reinstated order requiring removal from the United States. *See Mejia v. Sessions,* 866 F.3d 573, 578–79 (4th Cir. 2017). The alien cannot raise any other issues, "including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." 8 C.F.R. § 1208.2(c)(3)(i). In other words, withholding does not address whether an alien is ordered removed—that has already been determined. It only addresses how, and more specifically where, the removal will occur.

Moreover, this withholding proceeding does not affect the *finality* of the order of removal that was reinstated from its original date. *See Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 216–17 (3d. Cir. 2018); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017). An order of removal "shall become final" under the Immigration and Nationality Act when either the order is affirmed by the Board of Immigration Appeals or the period for review expires, whichever occurs first. § 1101(a)(47)(B) (The order of deportation "shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."). And for each Petitioner, the order of removal was "final" long ago—either because the Board has already affirmed the order or the time for any review has passed, *see* 8 C.F.R.

36

§ 1003.38(b) (notice of appeal shall be filed with the Board of Immigration Appeals within thirty days of the Immigration Judge's decision).

The order of removal applicable here is the same order that *already* removed Petitioners. Section 1231(a)(5) directs that "the prior order of removal is reinstated from its original date." That reinstatement does not create a new or second order of removal. It simply *reinstates* the prior order. And it is the original "date the *order of removal* be[came] administratively final" that triggers Petitioner's detention and removal. § 1231(a)(1)(B)(i) (emphasis added). The order was final then and is final now.

## C.

The Majority rejects this plain application of § 1231's dictates and the statutory definition of finality in § 1101(a)(47)(B). Instead, the Majority suggests that the otherwise final order of removal is converted into a non-final order once a withholding proceeding begins. But none of the bases for this suggestion is convincing.

The Majority first claims that reinstatement somehow resets finality for the order of removal. If reinstatement somehow creates a separate and "new" order of removal, they argue, then the statutory definition of finality's focus on Board review does not fit because § 1231(a)(5) prohibits the Board from reviewing the reinstated order at all. But § 1231(a)(5) does not create a new order of removal; it simply "restore[s]" the old order, to its "former state." *Reinstate*, BLACK'S LAW DICTIONARY (11th ed. 2019). There is only one order of removal, and the opportunity for review by the Board of Immigration Appeals has long since passed.

37

Also flowing from this false premise is the Majority's claim that applying the statutorily required definition of finality would not make sense under the finality requirements for judicial review under § 1252. As we just discussed, the single order of removal is not reset by § 1231(a)(5). So it is final as of when it originally became final. And the finality required under § 1252(b)(1) runs from the original finality, not the date of reinstatement.

We addressed this relationship between the reinstatement provision, § 1231(a)(5), and the judicial review provision, § 1252, in *Mejia v. Sessions*, 866 F.3d 573 (4th Cir. 2017).[2] There, we explained that "§ 1231(a)(5) doesn't deprive us of jurisdiction to review the constitutional claims and questions of law that arise from an underlying removal order in the reinstatement context." *Id*. at 589. So while "the underlying removal order in most circumstances may *not* be reviewed by the Board of Immigration Appeals," Majority Op.

---

[2] Mejia was an alien with a prior order of removal reinstated under § 1231(a)(5). *Mejia*, 866 F.3d at 577. She then applied for asylum and withholding of removal and was placed in withholding-only proceedings. *Id.* at 578. The immigration judge granted her withholding of removal but rejected her asylum claim. *Id.* Mejia sought review of both her asylum claim and her challenge to the validity of her removal order based on defects in the underlying removal order. *Id.* at 576. As for the latter, the Court found that it had no jurisdiction to consider this issue because Mejia did not timely file her challenge. *Id.* at 588. Mejia urged the Court to read "§ 1252(b)(1)'s deadline to refer to the date on which the reinstated order of removal—not the original order—becomes final." *Id.* at 589. But the Court held that "the 30-day deadline runs from the date an original order of removal becomes final." *Id.* As this Court explained, it is "feasible that an individual removed to her home country could illegally re-enter the United States, have the original removal order reinstated by DHS, and petition for review—all within a month's time." *Id.* at 590. Thus, the Court's holding did not abolish "review of all underlying orders in reinstatement." *Id.* (citations and emphasis omitted). There could be judicial review if the alien petitioned for review no more than thirty days from the date the original order of removal became final.

38

at 30 n.11, there can still be judicial review of certain claims raised upon reinstatement of a removal order, if the petition for judicial review is "filed . . . in accordance with [§ 1252]." *Mejia*, 866 F.3d at 589 (citing § 1252(a)(2)(D)).

Section 1252(b)(1) requires that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." And we interpreted the phrase, "final order of removal," to refer to the "*original* order of removal," not the reinstated order. *See Mejia*, 866 F.3d at 589 (holding "that the 30-day deadline [for petitioning for judicial review] runs from the date an *original* order of removal becomes final" and rejecting the argument that the deadline refers to the date when the *reinstated* removal order becomes final). Thus, in this Circuit, determining whether we have jurisdiction under § 1252 turns on whether the alien filed his petition for judicial review within thirty days from the date when the "*original* order of removal becomes final." *Id.* The statutory definition of finality applies "equally to the judicial review provision," Majority Op. at 30 n.11, and our jurisdictional inquiry is whether the *original*, not the reinstated, removal order meets the definition of finality in § 1101(a)(47)(B).

Yet the Majority still argues that a reinstated removal order is not "final" for judicial review until the completion of the proceeding for withholding of removal, relying on decisions from the Second, Fifth, and Ninth Circuits for support. But these cases are improperly based on a pragmatic desire to permit judicial review that we rejected in *Mejia*. As this Court explained, if we were to accept the argument that the period for judicial review of a reinstated removal order depends on when the reinstatement is "final," this "'would defeat the purpose of the statute's time bar by allowing a challenge to an

39

underlying removal order any time a reinstated order is issued.'" *Mejia*, 866 F.3d at 589

(quoting *Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 203 (3d Cir. 2013)).

In another attempt to avoid the finality of the order of removal, the Majority focuses

on purported practicalities, arguing that the "finality" required under § 1231(a)(1)(B) is the

final "authority" to physically remove the alien. Majority Op. at 20, 24. But nowhere does

the statute refer to "actual legal authority" to remove an alien.[3] Section 1231(a)(1)(B) is

triggered by the administrative finality of the "order of removal." Only by this sleight of

hand—converting the finality of an "order" to some amorphous final "authority"—can one

---

[3] The Majority purports to derive the "actual legal authority" standard based on the three dates listed in § 1231(a)(1)(B), the latest of which begins the removal period:

   (i)     The date the order of removal becomes administratively final.

   (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

   (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Those dates, it reasons, are "potential legal impediments to removal," suggesting that, rather than determine which date applies, the court should determine whether any "legal impediment" exists. Majority Op. at 20, 26. Apparently, that includes impediments that are not listed, such as the withholding proceedings at issue here.
   Creating this standard requires a judicial addition to the clear statutory language. Section 1231(a)(1)(B) lists only three events that trigger the beginning of the removal period. And the list is exclusive, not merely illustrative. Section 1231(a)(1)(B) provides that "[t]he removal period begins on the latest of the following." The provision does not wait for "*all* legal barriers to removal [to be] cleared away." Majority Op. at 21 (emphasis added). While the three triggering events listed in § 1231(a)(1)(B) are themselves legal impediments, this does not mean that the list includes *all* other potential barriers to removal. Instead, as the *expressio unius* canon explains, "expressing one item of an associated group or series excludes another left unmentioned." *N.L.R.B. v. SW Gen., Inc.*, 137 S.Ct. 929, 940 (2017) (citation and alterations omitted).

40

avoid the conclusion that the reinstated removal order under § 1231(a)(5) is an administratively final order.

Finally, the Majority claims that "the fact the removal period is limited to 90 days strongly suggests that [§ 1231] is intended to apply only when all legal barriers to removal are cleared away." Majority Op. at 21. But § 1231 provides that aliens with orders of removal reinstated under § 1231(a)(5) "may be detained beyond the removal period." § 1231(a)(6). Among other ways, this extended detention applies to any alien "ordered removed who is inadmissible under Section 1182." *Id.* And aliens with orders of removal reinstated under § 1231(a)(5) are "inadmissible" under § 1182(a)(9). *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 151 (2d Cir. 2008) (an alien with a reinstated removal order was "permanently inadmissible" under § 1182); *see also Terrazas-Hernandez v. Barr*, 924 F.3d 768, 775 (5th Cir. 2019); *Mendez-Gomez v. Barr*, 928 F.3d 728, 732–33 (8th Cir. 2019). Thus, each Petitioner is subject to extended detention under § 1231(a)(6).

And failing to effectuate removal within ninety days is no dereliction of statutory duties: § 1231(a)(1) directs removal within ninety days, but § 1231(b)(3)(A) bars removal to a country where life or freedom would be threatened on protected grounds. So where an alien seeks withholding from removal to one country under § 1231(b)(3), *see Fernandez-Vargas*, 548 U.S. at 35 n.4, the statutory scheme itself contemplates that the alien may be removed to another country, § 1231(b)(2), and continued in detention under § 1231(a)(6).

In sum, the language of § 1231 governs every step: the order of removal's reinstatement from its original date (§ 1231(a)(5)), the bar on reviewing the order of

removal (§ 1231(a)(5)), the direction to promptly remove the alien (§ 1231(a)(1)(A)), the extension of the removal period (§ 1231(a)(1)(C)), the withholding challenge to the execution of the order (§ 1231(b)(3)(A)), and the alien's detention (§§ 1231(a)(2), 1231(a)(6)).

## II.

Despite the directives in § 1231, Petitioners argue that they should be treated under § 1226 and not § 1231. But § 1226 applies in a different context: when an alien is "pending a decision on whether the alien is to be removed from the United States." § 1226(a). For this provision to apply, the decision that must remain undecided is not whether the alien is to be removed to a certain country but, as § 1226 states, "whether the alien is to be removed from the United States" *at all*.

The Petitioners are not awaiting that decision. As explained above, they illegally reentered the United States after being "ordered removed." § 1231(a)(1)(A). Their "prior order of removal [was] reinstated from its original date and is not subject to being reopened or reviewed." § 1231(a)(5). They are barred from applying "for any relief under this chapter," which includes the possibility of release from detention under § 1226.

The statutory structure of the Immigration and Nationality Act confirms that it is § 1231, not § 1226, that applies to the Petitioners. We cannot read the text of these two provisions in a vacuum but must consider the statutory structure as one of the "tools of divining meaning." *Abramski v. United States*, 573 U.S. 169, 179 (2014).

Both § 1226 and § 1231 are in a part of the Act entitled "Inspection, Apprehension, Examination, Exclusion, and Removal." As the title implies, this part provides a timeline

42

of events that spans eleven statutory provisions from § 1221 to § 1232. Sections 1221 to 1224 discuss the arrival of aliens. Those sections are followed by § 1225, which provides instructions for inspecting the aliens, expediting removal of certain "arriving aliens," and referring others for a removal hearing. Next, § 1226 concerns the "[a]pprehension and detention of aliens" who are still "pending a decision on whether the alien is to be removed from the United States." § 1226(a). It is not until three statutory provisions later, in § 1229, that the Act explains the structure of the alien's removal proceedings. *See* §§ 1229–1229c. If the alien is admitted into the United States, § 1230 explains how to record admission. On the other hand, "when an alien is ordered removed," § 1231 directs how the alien is treated. This series of events reflects that, once the alien has been ordered removed from the United States in a removal proceeding under § 1229a and that order has been reinstated under § 1231(a)(5), the alien cannot go back in time, so to speak, to § 1226. Section 1226 simply does not apply here.

*  *  *

Section 1231 speaks directly to those, like Petitioners, who illegally return to the United States after having previously been ordered removed. Section 1226 does not. While their detention remains subject to a *Zadvydas* claim that there is no significant likelihood of removal in the foreseeable future, the statutory language and structure dictates that each Petitioner may be detained without a bond hearing as permitted by § 1231.