(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JOHNSON, ACTING DIRECTOR OF U. S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL. *v.* GUZMAN CHAVEZ ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 19–897. Argued January 11, 2021—Decided June 29, 2021

Federal immigration law establishes procedures for removing aliens living unlawfully in the United States as well as for determining whether such persons are detained during removal proceedings. The Department of Homeland Security (DHS) may arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U. S. C. §1226(a). An alien detained under §1226(a) may generally apply for release on bond or conditional parole. §1226(a)(2). If an alien is ordered removed and the order becomes "administratively final," detention becomes mandatory. §§1231(a)(1)(A)–(B), (a)(2). If an alien removed under this process reenters the country without authorization, that person faces reinstatement of "the prior order of removal from its original date." §1231(a)(5). That order "is not subject to being reopened or reviewed," and the alien "shall be removed under the prior order at any time after reentry." *Ibid.*

Respondents are aliens who were removed from the United States and later reentered without authorization. When DHS reinstated their prior removal orders, each respondent sought withholding-only relief to prevent DHS from executing those orders based on fear of returning to their home country as designated in the removal orders. While respondents' withholding-only proceedings were pending, DHS detained respondents, and respondents sought release on bond, which was initially denied. The Government opposed their release, maintaining that because respondents were detained under §1231, not §1226, they were not entitled to bond hearings. Respondents filed habeas proceedings in District Court, seeking a declaration that §1226

governs their detention, as well as an injunction ordering the Government to grant them individualized bond hearings consistent with §1226. The District Court entered summary judgment for respondents, and the Fourth Circuit affirmed.

*Held*: Section §1231, not §1226, governs the detention of aliens subject to reinstated orders of removal. Pp. 8–22.

(a) Section 1231 authorizes detention "when an alien is ordered removed" and enters the "removal period," which begins, as relevant here, on "[t]he date the order of removal becomes administratively final." It is undisputed that each respondent was previously "ordered removed" pursuant to a valid order of removal and that those orders were "reinstated from [their] original date[s]" under §1231(a)(5). Those reinstated removal orders were also "administratively final." By inserting the word "administratively," Congress made clear that DHS need not wait for the alien to seek or exhaust judicial review of that order. Respondents contend that even if §1231 normally governs in such cases, it ceases to apply when the alien pursues withholding-only relief. Respondents' arguments cannot overcome the statute's plain text. Pp. 8–18.

(1) Respondents misunderstand the nature of withholding-only proceedings when they argue that because an immigration judge or the Board of Immigration Appeals (BIA) might determine that DHS cannot remove an alien to the specific country designated in the removal order, the question whether the alien is "to be removed" remains "pending" and is therefore governed by §1226. If an immigration judge grants an application for withholding of removal, DHS is prohibited from removing the alien *to* that particular country, not *from* the United States. The removal order remains in full force, and DHS retains the authority to remove the alien to any other authorized country. This Court and the BIA have long understood the nature of withholding-only relief this way. See, *e.g., INS* v. *Aguirre-Aguirre,* 526 U. S. 415, 419. Pp. 11–14.

(2) Respondents next argue that a removal order does not become "administratively final" until the withholding-only proceedings conclude. A reinstated removal order, they contend, loses its prior finality when the alien initiates withholding-only proceedings. This argument ignores that removal orders and withholding-only proceedings address two distinct questions and end in two separate orders. See *Nasrallah* v. *Barr*, 590 U. S. ___, ___. Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise "administratively final" reinstated order of removal. Pp. 14–16.

(3) Respondents submit that the "except as otherwise provided in this section" language in the opening clause of §1231(a)(1)(A)—which

sets the default for the length of the removal period at 90 days—places a limit on when the removal period is triggered. The most natural reading of that phrase, however, is that the Government must remove an alien within 90 days *unless* another section of §1231 specifically contemplates that the removal period can exceed 90 days. The presence of specific statutory provisions in §1231 that relate to the length of the removal period leads to the conclusion that the opening clause of §1231(a)(1)(A) refers to them and not the withholding-only provision, which does not mention the length of the removal period and does not stand in the way of removal to a third country. Pp. 16–17.

(b) Statutory structure confirms this Court's textual reading. Every provision applicable to respondents is located in §1231. It would thus be odd if the provision governing their detention was located in §1226, rather than §1231, which contains its own detention provision. Moreover, the inclusion of the statutory withholding provision in §1231, grouped with other provisions that relate to *where* DHS may remove an alien, illustrates how withholding-only relief fits within the removal process generally. The order of the applicable Immigration and Nationality Act provisions provides further context for interpreting the proper application of §1226 and §1231. Section 1226 applies before an alien proceeds through the removal proceedings and obtains a decision; §1231 applies after. Pp. 18–19.

(c) Respondents' contrary reading would also undermine Congress's judgment regarding the detention of different groups of aliens who posed different flight risks. Aliens who have not been ordered removed are less likely to abscond because they have a chance of being found admissible, while aliens who have already been ordered removed are generally inadmissible, see §1182(a)(9)(C)(ii), and have already demonstrated a willingness to violate the terms of a removal order, see §1231(a)(6). Congress had obvious reasons to treat these two groups differently. P. 20.

(d) Respondents remaining arguments are that withholding-only proceedings are a legal impediment that, like the three triggers to the start of the removal period listed in §1231(a)(1)(B), must be eliminated before the removal period begins and that Congress could not have intended §1231 to apply to an alien in withholding-only proceedings because withholding-only proceedings often take longer than 90 days. Neither argument is persuasive. Pp. 20–22.

940 F. 3d 867, reversed.

ALITO, J., delivered the opinion of the Court, except as to footnote 4. ROBERTS, C. J., and KAVANAUGH and BARRETT, JJ., joined that opinion in full. THOMAS, J., filed an opinion concurring except for footnote 4 and concurring in the judgment, in which GORSUCH, J., joined. BREYER, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

------

No. 19–897

------

## TAE D. JOHNSON, ACTING DIRECTOR OF U. S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL., PETITIONERS *v.* MARIA ANGELICA GUZMAN CHAVEZ, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 29, 2021]

JUSTICE ALITO delivered the opinion of the Court, except as to footnote 4.

Federal immigration law contains various provisions authorizing the Government to detain aliens during the removal process. This case concerns two of them: 8 U. S. C. §1226 and 8 U. S. C. §1231. We are asked to decide which of those provisions applies to aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders. If the answer is §1226, which applies "pending a decision on whether the alien is to be removed from the United States," then the alien may receive a bond hearing before an immigration judge. If the answer is §1231, which applies after the alien is "ordered removed," then the alien is not entitled to a bond hearing. We conclude that §1231, not §1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to

a bond hearing while they pursue withholding of removal.

# I
## A

The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States. In the ordinary course, if the Department of Homeland Security (DHS)[1] discovers that an alien is living in the United States without authorization, it may initiate removal proceedings against the alien by sending him a "notice to appear." 110 Stat. 3009–587, as added and amended, 8 U. S. C. §1229(a). That notice informs the alien of, among other things, the charges against him and the time and place of the hearing at which an immigration judge will determine whether the alien is to be removed. §§1229(a)(1)(D), (G)(i).

The INA further provides that DHS may arrest and detain the alien "pending a decision on whether the alien is to be removed from the United States." §1226(a). Aliens who are arrested and detained may generally apply for release on bond or conditional parole. §1226(a)(2).[2] To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings. 8 CFR §§236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999). If DHS denies the alien's request, the alien may request a bond hearing in front of an immigration judge by filing an application

———————

[1] Although many of the provisions at issue in this case refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act. See *Nielsen* v. *Preap*, 586 U. S. ___, ___ n. 2 (2019) (slip op., at 3, n. 2); see also Brief for Petitioners 2–3, and n. 1; Brief for Respondents 7, and n. 2.

[2] There is one exception. For certain criminal aliens and aliens who have connections to terrorism, detention is mandatory and release is permitted in very limited circumstances. See 8 U. S. C. §1226(c); *Nielsen*, 586 U. S., at ___–___, ___–___ (slip op., at 3–4, 23–24). That exception does not apply here.

for a change in the alien's detention conditions. See
§§236.1(d)(1), 1003.19(a), 1236.1(d)(1). Either the alien or
DHS may appeal the immigration judge's decision to the
Board of Immigration Appeals (BIA). See §§236.1(d)(3)(i),
1003.19(f ), 1236.1(d)(3)(i).

At some point, the alien will also have the above-
mentioned hearing before an immigration judge to deter-
mine whether he is inadmissible or deportable, and there-
fore subject to removal. 8 U. S. C. §1229a(a)(1). The alien
may seek various forms of relief or protection from removal,
such as asylum or withholding of removal. See
§1229a(c)(4)(A); 8 CFR §§1208.4(b)(3)(i), 1240.11(c), (e). If
the immigration judge decides that the alien is inadmissible
or deportable and that the alien is not entitled to any of the
relief or protection that he requested, the immigration
judge will issue an order of removal. 8 U. S. C. §1229a(c)(5).
If the immigration judge issues an order of removal, the al-
ien may file a motion to reconsider, a motion to reopen, an
appeal to the BIA, and a petition for review in federal court.
§§1229a(c)(5)–(7), 1252(b); 8 CFR §1240.15.

Once an alien is ordered removed, DHS must physically
remove him from the United States within a 90-day "re-
moval period." 8 U. S. C. §1231(a)(1)(A). The removal pe-
riod begins on the latest of three dates: (1) the date the or-
der of removal becomes "administratively final," (2) the
date of the final order of any court that entered a stay of
removal, or (3) the date on which the alien is released from
non-immigration detention or confinement. §1231(a)(1)(B).
During the removal period, detention is mandatory.
§1231(a)(2).

Under §1231, the removal period may be extended in at
least three circumstances, such that an alien remains de-
tained after 90 days have passed. First, the removal period
may be extended if the alien fails to make a timely applica-
tion for travel documents or acts to prevent his removal.

§1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. §1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. §1231(a)(6); see also 8 CFR §241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

Although the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period, this Court has "read an implicit limitation" into the statute "in light of the Constitution's demands," and has held that an alien may be detained only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas* v. *Davis*, 533 U. S. 678, 689 (2001). And according to the Court, a period reasonably necessary to bring about the alien's removal from the United States is presumptively six months. *Id.,* at 701. After that point, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien. *Ibid.*; see also 8 CFR §241.13 (setting out the *Zadvydas* procedures).

If no exception applies, an alien who is not removed within the 90-day removal period will be released subject to supervision. See 8 U. S. C. §1231(a)(3); see also 8 CFR §241.5.

## B

In addition to the removal procedures outlined above,

Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed. The relevant statutory provision states:

> "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." §1231(a)(5).

DHS's regulations set out the process for reinstating an order of removal. In short, the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order. See 8 CFR §§241.8(a)–(c), 1241.8(a)–(c).

Title 8 U. S. C. §1231(a)(5) applies to "all illegal reentrants," and it "explicitly insulates the removal orders from review," while also "generally foreclos[ing] discretionary relief from the terms of the reinstated order." *Fernandez-Vargas* v. *Gonzales*, 548 U. S. 30, 35 (2006). It does not, however, preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order. *Ibid.,* n. 4; see also §1231(b)(3)(A).

## C

Much of this case turns on the nature of withholding-only proceedings. There are two paths for seeking withholding of removal. First, the alien may seek statutory withholding under §1231(b)(3)(A), which provides that "the Attorney

General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Second, the alien may seek withholding under regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113, which prohibits removal of an alien to a country where the alien is likely to be tortured. See 8 CFR §§208.16–208.17, 1208.16–1208.17.

The process for applying for withholding of removal depends on whether the alien is subject to the standard removal proceedings or a reinstated order of removal. As mentioned above, an alien subject to the standard removal process typically applies for withholding during the course of his removal proceedings. See *supra*, at 3. But because an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal. See §§208.31(a), 1208.31(a). At that point, DHS will refer him to an asylum officer for a reasonable fear determination, which will normally be conducted within 10 days of the referral. §§208.31(b), 1208.31(b). If the asylum officer concludes that the alien has a reasonable fear, he will refer the matter to an immigration judge for initiation of withholding-only proceedings. §§208.31(e), 1208.31(e). Those proceedings are "limited to a determination of whether the alien is eligible for withholding or deferral of removal," and as such, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." §§208.2(c)(3)(i), 1208.2(c)(3)(i). The immigration judge's final decision as to withholding can be appealed to the BIA.

§§208.31(e), 1208.31(e).

If an alien is granted withholding-only relief, DHS may not remove the alien to the country designated in the removal order unless the order of withholding is terminated. §§208.22, 1208.22. But because withholding of removal is a form of "'country specific'" relief, *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 428, n. 6 (1987), nothing prevents DHS "from removing [the] alien to a third country other than the country to which removal has been withheld or deferred," §§208.16(f), 1208.16(f); see also §§208.17(b)(2), 1208.17(b)(2).

D

Respondents are aliens who were removed from the United States and later reentered without authorization. *Guzman Chavez* v. *Hott*, 940 F. 3d 867, 870 (CA4 2019). When DHS discovered their presence, it reinstated their prior removal orders. *Id.,* at 870–871. Each respondent expressed a fear of returning to his or her home country and was referred to an asylum officer for a reasonable fear interview. *Id.*, at 871. In each case, the asylum officer determined that the respondent had a reasonable fear of persecution or torture and referred the respondent to an immigration judge for withholding-only proceedings. *Ibid.* Although some of the respondents were initially granted supervised release, all were ultimately detained by DHS. *Ibid.* They then sought release on bond while their withholding-only proceedings were pending. The Government opposed release, maintaining that because respondents were detained under 8 U. S. C. §1231, not §1226, they were not entitled to bond hearings.

Respondents filed two habeas proceedings in the Eastern District of Virginia seeking a declaration that §1226 rather than §1231 governs their detention, as well as an injunction ordering the Government to grant them individualized

bond hearings consistent with §1226.[3]  In both cases, the
District Court entered summary judgment in favor of re-
spondents, concluding that §1226 governs their detention.
See *Romero* v. *Evans*, 280 F. Supp. 3d 835, 849 (2017); *Diaz*
v. *Hott*, 297 F. Supp. 3d 618, 623, 628 (2018).  The Govern-
ment appealed both decisions, and the Fourth Circuit af-
firmed, over a dissent by Judge Richardson.  See 940 F. 3d,
at 882.  In doing so, the Fourth Circuit joined the Second
Circuit but departed from the Third, Sixth, and Ninth Cir-
cuits.  Compare *Guerra* v. *Shanahan*, 831 F. 3d 59, 64 (CA2
2016), with *Martinez* v. *LaRose*, 968 F. 3d 555, 559 (CA6
2020); *Guerrero-Sanchez* v. *Warden York County Prison*,
905 F. 3d 208, 213 (CA3 2018); *Padilla-Ramirez* v. *Bible*,
882 F. 3d 826, 832 (CA9 2017). We granted certiorari to re-
solve the split.  *Albence* v. *Guzman Chavez*, 590 U. S. ___
(2020). We conclude that §1231, not §1226, governs re-
spondents' detention and now reverse the judgment of the
Fourth Circuit.[4]

## II
## A

We turn first to the statutory text.  Section 1226 provides
that "an alien may be arrested and detained pending a de-
cision on whether the alien is to be removed from the United
States." §1226(a).  Section 1231, by contrast, authorizes de-
tention "when an alien is ordered removed" and enters the
"removal period," which begins on "[t]he date the order of
removal becomes administratively final." §§1231(a)(1)(A)–

––––––––––

[3] In one of the proceedings, the District Court certified a Virginia-wide
class of aliens detained during withholding-only proceedings.  940 F. 3d,
at 871.  The Government did not challenge below, and does not challenge
in this Court, the District Court's decision to certify the class, and we do
not address that decision here.

[4] We have jurisdiction to review the decision below.  See *Jennings* v.
*Rodriguez*, 583 U. S. ___, ___–___ (2018) (plurality opinion) (slip op., at
8–11).

(B), (2).[5]  It further provides that when an alien reenters the country after having already been removed, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." §1231(a)(5).  In that scenario, "the alien is not eligible and may not apply for any relief under this chapter" and "shall be removed under the prior order at any time after the reentry." *Ibid.*

The parties agree that §1226 governs the detention of aliens until §1231's "removal period" begins.  As relevant here, the removal period begins when an alien is "ordered removed," and the removal order becomes "administratively final."  To resolve this case, we therefore must decide two questions: whether respondents were "ordered removed" and whether their reinstated removal orders were "administratively final."  The answer to both questions is yes.

First, respondents have been "ordered removed."  It is undisputed that each respondent was previously removed pursuant to a valid order of removal.  And after respondents later reentered the United States without authorization, those prior orders were "reinstated from [their] original date[s]" under §1231(a)(5).  Those reinstated orders are not subject to reopening or review, nor are respondents eligible for discretionary relief under the INA.  Instead, they "shall be removed under the prior order at any time after the reentry." *Ibid.*  Accordingly, respondents' prior orders, reinstated under §1231(a)(5), show that respondents were ordered removed.

Second, respondents' reinstated removal orders are "administratively final."  Although that phrase is not defined in the statute, its meaning is clear.  By using the word "administratively," Congress focused our attention on the

_____

[5]The other two triggers for the removal period—a court order lifting a stay and the release from non-immigration detention or confinement— do not apply here.  See §§1231(a)(1)(B)(ii)–(iii).

*agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court. Context confirms this interpretation. Recall that under §1231(a)(1)(B), the removal period begins "on the latest of" three events: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined" outside the immigration process, the date of the alien's release. Reading the first two provisions together, it is clear that DHS need not wait for the alien to seek, and a court to complete, judicial review of the removal order before executing it. Rather, once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien *unless* a court issues a stay. That reinforces why Congress included "administratively" before the word "final" in the first provision.

Respondents do not contest that their prior removal orders have long been "administratively final," as we understand the term. See Brief for Respondents 8, 20–21, 24–26.[6] Each had the opportunity to seek review in the BIA after the initial removal order was entered, and §1231(a)(5) explicitly prohibits them from seeking review or relief from the order after it is reinstated following unlawful reentry. In other words, there is nothing left for the BIA to do with respect to the removal order other than to execute it. Thus, respondents' orders are administratively final.

―――――――――
[6] Respondents do argue, however, that some lower courts' interpretation of the phrase "final order of removal" as it is used in 8 U. S. C. §1252(b)(1) requires that this Court adopt respondents' interpretation of §1231 here. Brief for Respondents 24–26, and n. 8. We express no view on whether the lower courts are correct in their interpretation of §1252, which uses different language than §1231 and relates to judicial review of removal orders rather than detention.

For these reasons, §1231's detention provisions are a natural fit for aliens subject to reinstated orders of removal. Respondents and the dissent appear to accept this much but nevertheless contend that even if §1231 normally governs aliens in this posture, it ceases to apply when such an alien pursues withholding-only relief. See *post*, at 6–7 (opinion of BREYER, J.). Each of the arguments on this score fails.

1

Respondents first argue that because an immigration judge or the BIA might determine that DHS cannot remove an alien to the specific country designated in the removal order, the question whether the alien is "to be removed" remains "pending" and is therefore governed by §1226. Respondents misunderstand the nature of withholding-only proceedings. When an alien applies for withholding-only relief, he does so as to a particular country. See 8 CFR §§208.31(a), 1208.31(a). The proceedings that result from such an application are "limited to a determination of whether the alien is eligible for withholding or deferral of removal," and "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." §§208.2(c)(3)(i), 1208.2(c)(3)(i). If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute. See §§208.16(f), 1208.16(f), 1240.12(d). And the statute provides numerous options: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the

United States; and finally, any country willing to accept the alien. Brief for Petitioners 3 (citing 8 U. S. C. §1231(b)(2)). In short, withholding-only relief is country-specific. It relates to *where* an alien may be removed. It says nothing, however, about the antecedent question *whether* an alien is to be removed from the United States.

This Court and the BIA have long understood the nature of withholding-only relief this way. In *INS* v. *Aguirre-Aguirre*, 526 U. S. 415, 419 (1999), we distinguished withholding-only relief from asylum, noting that "a grant of asylum permits an alien to *remain in the United States* and to apply for permanent residency after one year," while "withholding only bars deporting an alien *to a particular country or countries*." (Emphasis added.) And in *Matter of I–S & C–S*, 24 I. & N. Dec. 432, 434 (BIA 2008), the BIA made clear that withholding-only relief "does not afford [an alien] any permanent right to remain in the United States." Rather, as the "regulations make clear," a grant of withholding "does not prevent the DHS from removing an alien to a country other than the one to which removal has been withheld." *Ibid.* Indeed, just last Term, we affirmed that a grant of withholding-only relief "means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country," and that "the noncitizen still may be removed at any time to another country." *Nasrallah* v. *Barr*, 590 U. S. ___, ___ (2020) (slip op., at 8) (internal quotation marks omitted).

Respondents counter that, as a practical matter, the questions "whether" an alien may be removed and "where" he may be removed to are indistinguishable because DHS often does not remove an alien to an alternative country if withholding relief is granted. They point to one source claiming that in 2017, only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative coun-

try. See Brief for Respondents 6, 30–31 (citing American Immigration Council & National Immigrant Justice Center, The Difference Between Asylum and Withholding of Removal 7 (Oct. 2020), www.americanimmigrationcouncil .org/sites/default/files/research/the_difference_between_ asylum_and_withholding_of_removal.pdf ). But the fact that alternative-country removal is rare does not make it statutorily unauthorized. Here, the statute makes clear that removability and withholding relief are distinct, and we decline to ignore the plain import of the statutory text in favor of on-the-ground statistics about the feasibility of removal to a third country.

Indeed, respondents' argument—that the decision about whether an alien "is to be removed" remains "pending" for purposes of §1226 until DHS is certain that it will be able to carry out that removal—is at odds with the statutory text of §1231 and our decision in *Zadvydas*. To begin, it is not plausible that an alien is detained under §1226 instead of §1231 while DHS resolves any practical problems associated with the execution of a removal order because §1231, not §1226, is the part of the INA that anticipates and addresses those problems. For example, §1231(a)(1)(C) extends the removal period if the alien fails to timely apply for travel documents and therefore cannot be removed to the relevant country. Section 1231(c)(2)(A) authorizes DHS to stay the immediate removal of certain aliens if it decides that immediate removal "is not practicable or proper." And §1231(a)(3) allows for supervised release after the 90-day removal period expires "[i]f the alien does not leave or is not removed" during that time period. Those provisions would be unnecessary if questions of how and where an alien is to be removed were bound up in whether the alien was removable at all under §1226.

Our decision in *Zadvydas* confirms this distinction between whether an alien is to be removed and where an alien is to be sent. In that case, we addressed claims raised by

two aliens who, due to the Government's inability to locate a country of removal, had been detained for prolonged periods of time under §1231. See 533 U. S., at 684–686. But rather than holding that these aliens should not have been detained under §1231 *at all* because the decision about whether they were to be removed remained "pending," the Court set out certain procedural mechanisms to allow aliens to seek release from §1231 detention if there was no significant likelihood of removal in the reasonably foreseeable future. *Id.,* at 701. That holding would make little sense if DHS had to conclusively resolve the question of "where" an alien was to be removed *before* resolving "whether" the alien was to be removed under §1226.[7]

### 2

Respondents next argue that a removal order does not become "administratively final" until the withholding-only proceedings conclude. That is so, they say, even if a reinstated order of removal is "administratively final" at the time of its reinstatement; according to their submission, when the alien initiates withholding-only proceedings, the reinstated order loses its prior finality. See Brief for Respondents 24–25. In a similar vein, the dissent contends that respondents' removal orders are not "administratively

——————

[7] Respondents attempt to distinguish our approach in *Zadvydas* v. *Davis*, 533 U. S. 678 (2001), by arguing that there is a difference between the Government's inability to remove an alien due to the grant of withholding-only relief and its inability to remove an alien because of the geopolitical and practical concerns that prevented removal in that case. But the premise of respondents' argument is that a decision about whether an alien "is to be removed" remains pending during withholding-only proceedings because it is not certain that the Government will actually be able to remove the alien from the country. The same lack of certainty existed in *Zadvydas*, where the Government's attempt to return an alien to the country listed in the removal order was rebuffed for geopolitical or practical reasons, and the Government had to search for an alternative.

final" because, by seeking withholding-only relief, respondents are "in effect" seeking "a modification of, a change in, or a withholding of, the 'prior order of removal.'" *Post*, at 9.

These related arguments suffer from the same flaw as the one just discussed: They ignore that removal orders and withholding-only proceedings address two distinct questions. As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings.

Case law makes this clear. In *Matter of I–S & C–S*, two aliens asserted that they were entitled to withholding of removal during their initial removal proceedings. The Immigration Judge concluded that they were removable but agreed that they were entitled to withholding relief. As a result, the Immigration Judge did not issue an order of removal but instead simply granted the aliens' withholding applications. 24 I. & N. Dec., at 432–433. DHS appealed, arguing that it was error for the Immigration Judge not to issue the order of removal. *Id.*, at 433. The BIA agreed. It stated that "[a]lthough entering an order of removal prior to granting withholding may appear to be a technicality," it is "axiomatic that in order to withhold removal there must *first* be an order of removal that can be withheld." *Ibid.* (emphasis added). In other words, the order of removal is separate from and antecedent to a grant of withholding of removal. Every Member of this Court approved that reading just last Term. In *Nasrallah* v. *Barr*, the majority explained that the grant of withholding relief under CAT "does not disturb the final order of removal," "affect the validity of the final order of removal," or otherwise "merge into the final order of removal." 590 U. S., at ___ (slip op., at 8). The dissent acknowledged the same. See *id.,* at ___ (opinion of THOMAS, J.) (slip op., at 5) ("The majority correctly notes that a CAT order does not fall within" the statute's definition of an order of removal); *id.,* at ___–___ (slip op., at 6–7) ("[S]tatutory withholding seeks to prevent removability and

is considered after the alien has been deemed removable. Thus, statutory withholding claims also do not affect the validity of the underlying removal order" (citation omitted)). Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise "administratively final" reinstated order of removal.

3

At oral argument, respondents offered a new textual argument in support of their position that §1231 does not govern their detention. They point to the opening clause of §1231(a)(1)(A), which states in full: "*Except as otherwise provided in this section*, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." (Emphasis added.) Respondents submit that because withholding-only relief is provided for in §1231, DHS cannot remove an alien who seeks such relief, and the removal period cannot begin under §1231(a)(1)(B). Tr. of Oral Arg. 33–34, 45. Stated differently, respondents read the "[e]xcept as" language as another limit on when the removal period is triggered, a reading that the dissent endorses. See *post*, at 7–9.

Even assuming that respondents did not forfeit this argument by failing to raise it in their brief, it fails on the merits. Section 1231(a)(1)(A) relates to the length of the removal period, and it sets the default for that period at 90 days. It does not, as respondents suggest, serve as the "gateway" for when the removal period begins. Tr. of Oral Arg. 45. Those triggers appear in §1231(a)(1)(B). Nor does it simply offer "basic operative language" regarding what DHS must do. *Post*, at 8. The provision's focus is the length of time that DHS has to remove an alien once the alien is ordered removed. And the most natural reading of the "ex-

cept as otherwise provided" clause is that DHS must re-move an alien within 90 days *unless* another subsection of §1231 specifically contemplates that the removal period can exceed 90 days. That aligns with the rest of §1231, which contains specific provisions mandating or authorizing DHS to extend detention beyond 90 days. See, *e.g.,* §1231(a)(1)(C) (requiring the extension of the 90-day period and permitting continued detention "if the alien fails or re-fuses to make timely application in good faith for travel or other documents necessary to the alien's departure or con-spires or acts to prevent the alien's removal subject to an order of removal"); §1231(c)(2)(A) (permitting DHS to stay immediate removal of certain aliens if such "removal is not practicable or proper" or the alien is needed to testify in a criminal case); §1231(a)(6) (permitting DHS to detain cer-tain groups of aliens "beyond the removal period").[8] Given the presence of specific statutory provisions in §1231 under which DHS is not required to remove the alien within 90 days, we have little trouble concluding that the opening clause of §1231(a)(1)(A) refers to them and not the with-holding-only provision, which does not mention the length of the removal period and does not stand in the way of re-moval to a third country.

In short, the statutory text makes clear that §1231, not

––––––––––

[8] The dissent contends that the second of these provisions, §1231(c)(2)(A), is "beside the point" because another provision in that subsection and a regulation provide that DHS has the authority to re-lease on bond an alien for whom it had previously stayed immediate re-moval so that the alien could testify in a prosecution. See *post,* at 8. But DHS's ability to release certain aliens on bond tells us nothing about the meaning of the phrase "[e]xcept as otherwise provided" in §1231(a)(1)(A). The point is that other provisions in §1231 contemplate situations in which DHS is not required to remove an alien in less than 90 days. The dissent otherwise dismisses the remaining two provisions as "unlike the restriction-on-removal provision" in that they "sugges[t] . . . an extension of the removal period beyond ninety days." *Post,* at 8. But that is the very feature that makes these provisions relevant to §1231(a)(1)(A).

§1226, governs respondents' detention, and none of respondents' counterarguments can overcome that plain text.

B

The statutory structure confirms the textual reading. Consider first the structure of §1231 itself, which is titled "Detention and removal of aliens ordered removed." Every provision applicable to respondents is located in §1231. Respondents' orders of removal are reinstated against them under §1231(a)(5). The bar on reopening or reviewing those removal orders, as well as the requirement that DHS remove aliens subject to reinstated orders, also appears in §1231(a)(5). And the provision allowing respondents to seek withholding-only relief comes from §1231(b)(3)(A). It would thus be odd if the provision governing respondents' detention was located in §1226, rather than §1231, which contains its own detention provision. See 940 F. 3d, at 887 (Richardson, J., dissenting).

Moreover, the inclusion of the statutory-withholding provision in §1231, grouped with other provisions that relate to *where* DHS may remove an alien, illustrates how withholding-only relief fits within the removal process generally. Section 1231(b) is entitled "Countries to which aliens may be removed." Paragraph (1) lists all of the countries to which an alien "arriving at the United States" may be removed. Paragraph (2) lists all of the countries to which "[o]ther aliens" may be removed. And paragraph (3)(A)— the statutory-withholding provision—states that "[n]otwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The placement of the statutory-withholding provision in §1231 is therefore strong evidence that

withholding-only proceedings are relevant to *where* an alien will be removed (and therefore detention under §1231), not *whether* the alien will be removed at all (and therefore detention under §1226).

The general structure of the INA provides further support. Sections 1226 and 1231 both appear in Part IV of Title 8, chapter 12, of the United States Code, entitled "Inspection, Apprehension, Examination, Exclusion, and Removal." The sections within that part proceed largely in the sequential steps of the removal process. Sections 1221 to 1224 address the arrival of aliens. Section 1225 provides instructions for inspecting aliens, expediting the removal of some, and referring others for a removal hearing. Section 1226 authorizes the arrest and detention of aliens pending a decision on whether they are to be removed. Section 1227 explains which aliens are deportable. Section 1228 authorizes the expedited removal of some of those deportable aliens. Sections 1229, 1229a, and 1229b set out the process for initiating and conducting removal proceedings, and they specify the types of relief that an alien can request during those proceedings, such as cancellation of removal. Section 1229c addresses voluntary departure. Section 1230 explains what to do if an alien is admitted. And §1231 explains what to do if the alien is ordered removed.

The order of the sections in Part IV provides helpful context for interpreting the proper application of §1226 and §1231. See 940 F. 3d, at 887–888 (Richardson, J., dissenting). Section 1226 applies before an alien proceeds through the removal proceedings and obtains a decision; §1231 applies after. Once an alien has been ordered removed from the United States in a removal proceeding under §1229a and that order has been reinstated under §1231(a)(5), "the alien cannot go back in time, so to speak, to §1226." *Id.,* at 888.

## C

Respondents' contrary reading would undermine Congress's judgment regarding the detention of different groups of aliens who posed different risks of flight: aliens detained under §1226 before having been ordered removed and those held under §1231 after already having been ordered removed.

Aliens who have not been ordered removed are less likely to abscond because they have a chance of being found admissible, but aliens who have already been ordered removed are generally inadmissible. See 8 U. S. C. §1182(a)(9)(C). The only apparent relief they can hope to obtain is a grant of withholding-only relief, and they would seem to still have a chance to get that relief if they absconded and were again apprehended. In addition, aliens who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order. See §1231(a)(6). Congress had obvious reasons to treat these two groups differently.

## III

Respondents' remaining arguments are unpersuasive. They primarily argue that §1226 governs whenever the INA does not "authorize" DHS to remove an alien. Brief for Respondents 16. Respondents rely on §1231(a)(1)(B), which, again, provides that the removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement. Respondents contend that those triggers constitute various legal impediments to removal, and those legal impediments show that §1231 detention applies only if DHS has secured full and complete legal authority to remove an alien. In other words, to detain an alien under

§1231, DHS must eliminate all legal impediments to removal. Otherwise, §1226 applies. Like the three legal impediments listed in §1231(a)(1)(B), respondents say, withholding-only proceedings are another impediment that deprives DHS of the full legal authority required to remove.

Respondents' argument fails on multiple levels. First, even if §1231(a)(1)(b) imposes three "legal impediments" to removal, that does not mean that *all* legal impediments must be eliminated before the removal period begins. Indeed, the text of §1231(a)(1)(B) suggests the opposite. It enumerates three specific triggers for the removal period but nowhere includes "the completion of withholding-only proceedings." See *NLRB* v. *SW General, Inc.*, 580 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 11) ("[E]xpressing one item of an associated group or series excludes another left unmentioned" (brackets and internal quotation marks omitted)). Nor does it otherwise include a catchall provision that might support respondents' position, such as "or the date on which DHS obtains final legal authority to remove the alien." Second, even if we accepted that there is an implicit requirement that DHS have full "legal authority" before the removal period begins, withholding-only proceedings have nothing to do with that authority. As explained above, DHS retains its authority during withholding-only proceedings to remove the alien to any country other than the country that is the subject of those proceedings.

Respondents next turn to the 90-day removal requirement in §1231(a)(1)(A). They contend that Congress could not have intended §1231 to apply to an alien in withholding-only proceedings because the removal period contemplated by §1231(a)(1)(A) is only 90 days, and withholding-only proceedings take much longer than that. Brief for Respondents 22, 26–27. In respondents' view, the removal period's short duration proves that it is meant to apply only during the final period during which DHS takes steps to put an alien

on an outbound plane. *Id.*, at 22. Even assuming respond-
ents are correct that withholding-only proceedings are not
usually completed in 90 days, it does not follow that §1231
is inapplicable to aliens who initiate them. In addition to
setting out a 90-day removal period, §1231 expressly au-
thorizes DHS to release under supervision or continue the
detention of aliens if removal cannot be effectuated within
the 90 days. See §§1231(a)(3), (6). There is no reason why
DHS cannot detain aliens in withholding-only proceedings
under those same post-removal-period provisions. As ex-
plained above, DHS routinely holds aliens under these pro-
visions when geopolitical or practical problems prevent it
from removing an alien within the 90-day period. See, *e.g.,*
*Zadvydas*, 533 U. S., at 684–686.

Relatedly,    respondents    suggest    that    because
§1231(a)(1)(A) says DHS "shall" remove the alien within
the 90-day removal period, and it would be practically im-
possible to do that in most cases involving withholding-
only proceedings, §1231 must not apply when withholding-
only proceedings are pending. See Brief for Respondents
26. But this argument overlooks the rest of §1231's di-
rective, which states that DHS "shall" remove the alien
within 90 days "[e]xcept as otherwise provided in this sec-
tion." §1231(a)(1)(A). And, as noted above, "this section"
provides for post-removal detention and supervised re-
lease in the event an alien cannot be removed within the
90-day removal period, §§1231(a)(3), (6). Interpreting
§1231 to apply even if withholding-only proceedings re-
main pending longer than 90 days thus does not "mak[e]
it structurally impossible" for DHS "to satisfy its statutory
obligation," as respondents argue. Brief for Respondents
26.[9]

_____

[9] The parties offer two other arguments, neither of which we need ad-
dress. The Government asks that we apply deference under *Chevron*

\*      \*      \*

We reverse the judgment of the U. S. Court of Appeals for the Fourth Circuit.

*It is so ordered.*

---

*U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), to its interpretation of §1231. But *Chevron* deference does not apply where the statute is clear. For their part, respondents argue that the canon of constitutional avoidance favors application of §1226, not §1231, to their detention. But that canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings*, 583 U. S., at \_\_\_ (slip op., at 12) (internal quotation marks omitted). As already ex-plained, the text makes plain that §1231, not §1226, governs.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–897

_____

## TAE D. JOHNSON, ACTING DIRECTOR OF U. S. IMMI-GRATION AND CUSTOMS ENFORCEMENT, ET AL., PETITIONERS *v.* MARIA ANGELICA GUZMAN CHAVEZ, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 29, 2021]

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, concurring except for footnote 4 and concurring in the judgment.

This Court has an "independent obligation" to assess whether it has jurisdiction. *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006). We do not have it here.

Congress has restricted our jurisdiction in removal cases. See 8 U. S. C. §1252(b)(9); *Jennings* v. *Rodriguez*, 583 U. S. \_\_\_, \_\_\_ (2018) (THOMAS, J., concurring in part and concurring in judgment) (slip op., at 3). Under §1252(b)(9), we can exercise judicial review of "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" in only two circumstances. One is to review a final order of removal. §1252(b)(9). The other is to exercise an express grant of jurisdiction elsewhere in §1252. *Ibid.*; *Jennings*, 583 U. S., at \_\_\_ (slip op., at 3). Neither circumstance is present here.

Therefore, if respondents' claims "aris[e] from any action taken or proceeding brought to remove an alien," the jurisdictional bar in §1252(b)(9) applies. And for all the reasons I discussed in *Jennings*, challenges to detention during the removal process, such as this one, "fall within the heartland of §1252(b)(9)." *Id.*, at \_\_\_ (slip op., at 5).

Although *Jennings* concerned aliens whom the Government had not yet ordered removed whereas the aliens here have removal orders reinstated against them, the result does not change.  Section 1252(b)(9) "cover[s] all claims related to removal proceedings."  *Nasrallah* v. *Barr*, 590 U. S. ___, ___, n. 2 (2020) (THOMAS, J., dissenting) (slip op., at 4, n. 2) (internal quotation marks omitted).  That includes claims arising after final orders of removal are issued, such as withholding-of-removal claims.  See *id.,* at ___–___ (slip op., at 3–4).  And it includes claims like the ones here, which involve a part "of the deportation process that necessarily serve[s] the purpose of ensuring an alien's removal."  *Jennings*, 583 U. S., at ___ (slip op., at 5).

In light of this jurisdictional problem, the Court should vacate and remand with instructions to dismiss for lack of jurisdiction.  But "because the Court has held that we have jurisdiction in cases like these" and the Court's opinion is otherwise correct, I join it except for footnote four.  See *Nielsen* v. *Preap*, 586 U. S. ___, ___ (2019) (THOMAS, J., concurring in part and concurring in judgment)  (slip op., at 1).

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–897

_____

TAE D. JOHNSON, ACTING DIRECTOR OF U. S. IMMI-
GRATION AND CUSTOMS ENFORCEMENT,
ET AL., PETITIONERS *v.* MARIA ANGELICA
GUZMAN CHAVEZ, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 29, 2021]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and
JUSTICE KAGAN join, dissenting.

Respondents in this case are noncitizens previously or-
dered removed from the United States. After leaving the
United States, each of them later returned (illegally). The
Government then reinstated their original removal orders.
See 8 U. S. C. §1231(a)(5). Each of the respondents argued
to immigration authorities that the Government could not
remove them because they reasonably feared persecution or
torture in the country to which the Government sought to
send them. And pursuant to the United States' interna-
tional commitments, the immigration authorities began the
process of determining whether the Government should
grant withholding-only relief (the withholding or deferral of
removal). See §1231(b)(3)(A); 8 CFR §§208.16–208.18,
208.31, 241.8(e), 1208.16–1208.18, 1208.31, 1241.8(e)
(2020).

The question in this case is whether respondents are en-
titled to a bond hearing while immigration authorities en-
gage in the lengthy process of determining whether re-
spondents have the legal right (because of their fear of
persecution or torture) to have their removal withheld. The
Court points to two statutory provisions that might answer

that question. The first, §1226, is a more general provision
governing detention, and favors respondents. It says that
"pending a decision on whether the alien is to be removed
from the United States," 8 U. S. C. §1226(a), the Govern-
ment "may release the alien on . . . bond" or "conditional pa-
role." §§1226(a)(2)(A), (B); see also 8 CFR §§236.1(c)(8),
1236.1(c)(8) (authorizing parole where the alien has demon-
strated that "such release would not pose a danger to prop-
erty or persons" and he or she "is likely to appear for any
future proceeding"). The second, §1231, is a provision that
more specifically applies to "aliens ordered removed," and
can be read to favor the Government because it does not
expressly provide for a bond hearing during what it calls
the 90-day "removal period." 8 U. S. C. §1231(a)(2); see also
8 CFR §241.13(b)(2)(ii). The Government claims that §1231
applies to respondents and allows the Government to deny
them bond hearings while their withholding-only relief pro-
ceedings take place.

The Court agrees with the Government. In its view, re-
spondents' circumstances fall within the scope of what
§1231 calls a "removal period." §§1231(a)(1)(A)–(B). And it
believes that section implicitly allows the Government to
deny bond hearings during the 90-day removal period. See
*ante,* at 7–8; §1231(a)(2). I agree that we have jurisdiction
to review the decision below. See *ante,* at 8, n. 4; see also
*Jennings* v. *Rodriguez*, 583 U. S. ___, ___–___ (2018)
(BREYER, J., dissenting) (slip op., at 30–31). In my view,
however, respondents do not fall within the scope of §1231.
Hence, §1231 does not apply. Rather, respondents' circum-
stances are governed by the more general section that con-
cerns the conditions of detention pending a final determi-
nation on removal. See §1226. And they are entitled to the
bond hearings for which that general section provides. See
§1226(a)(2).

I

Readers should keep in mind two subsections of §1231's relevant statutory text. The first subsection at issue makes clear what §1231 is about, namely, a "removal period." It then sets forth a general rule. It says:

> "**(1) Removal period**
> "**(A) In general**
> "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U. S. C. §1231(a)(1)(A).

(Readers should also note that while many of the provisions at issue here refer to the "Attorney General," Congress has elsewhere transferred enforcement of some of those provisions to the Secretary of Homeland Security. See *Nielsen* v. *Preap*, 586 U. S. \_\_\_, \_\_\_, n. 2 (2019) (slip op., at 3, n. 2).) The second subsection sets forth a restriction on removal (the restriction-on-removal provision), an exception to the general rule. It says:

> "**(3) Restriction on removal to a country where alien's life or freedom would be threatened**
> "**(A) In general**
> "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." §1231(b)(3)(A).

This restriction on removal when an alien fears persecution or torture embodies an important international legal obligation that the United States has undertaken. See Refugee Act of 1980, 94 Stat. 107, codified in part at 8 U. S. C.

§1231(b)(3); see also Protocol Relating to the Status of Ref-
ugees, Art. 1, §1, Jan. 31, 1967, 19 U. S. T. 6223, 6225,
T. I. A. S. No. 6577 (United States acceding to Articles 2
through 34 of the Convention Relating to the Status of Ref-
ugees, Art. 33(1), July 28, 1951, 189 U. N. T. S. 150). The
United States also follows a policy that withholds or defers
removal "of any person to a country in which there are sub-
stantial grounds for believing the person would be in dan-
ger of being subjected to torture." §2242, 112 Stat. 2681–
822, note following 8 U. S. C. §1231, p. 844; 8 CFR
§§208.16–208.18 (implementing the Convention Against
Torture and Other Cruel, Inhuman or Degrading Treat-
ment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–
20, 1465 U. N. T. S. 85). These policy commitments, embod-
ied in §1231's restriction-on-removal provision, apply to any
alien ordered removed, including respondents, who are en-
titled to ask for withholding-only relief. See *Fernandez-
Vargas* v. *Gonzales*, 548 U. S. 30, 35, n. 4 (2006); 8 CFR
§§208.31, 241.8(e), 1208.31, 1241.8(e).

A

The procedures to determine whether an alien qualifies
for withholding-only relief are complex. Any alien, includ-
ing one "whose removal is reinstated" under 8 U. S. C.
§1231(a)(5), must be afforded the opportunity to "expres[s]
a fear of returning to the country of removal" specified in
the order of removal. 8 CFR §208.31(a) (boldface omitted).
An asylum officer will then interview the individual to de-
termine whether that individual "has a reasonable fear of
persecution or torture." §208.31(c). (Asylum officers found
that each respondent here has a "reasonable fear." *Romero*
v. *Evans*, 280 F. Supp. 3d 835, 837 (ED Va. 2017).) If so, an
immigration judge will "full[y] conside[r] . . . the request for
withholding of removal only." §§208.31(e); 1208.31(e). If
the immigration judge denies the claim, the alien can ap-

peal to the Board of Immigration Appeals (BIA) and, as applicable, seek judicial review. §§208.31(e), (g), 1208.31(e), (g); 8 U. S. C. §§1252(a)(1), (4).

Studies have found that this procedure often takes over a year, with some proceedings lasting well over two years before eligibility for withholding-only relief is resolved. See Hausman, ACLU Immigrants' Rights Project, Fact-Sheet: Withholding-Only Cases and Detention 2 (Apr. 19, 2015), https://www.aclu.org/sites/default/files/field_document/withholding_only_fact_sheet_-_final.pdf (finding an average length of detention of 114 days when neither party appealed the immigration judge's final decision, 301 days when at least one party appealed and the BIA rendered a final decision, and 447 days when the BIA remanded the case and the immigration judge made a final decision); see also, *e.g.*, *Martinez* v. *Larose*, 968 F. 3d 555, 558 (CA6 2020) (alien detained for over 28 months while awaiting withholding-only relief eligibility determination).

Studies have also found that, once withholding-only relief is granted, the alien is ordinarily not sent to another, less dangerous country. Rather, the alien typically remains in the United States for the foreseeable future. See Brief for Respondents 6 (noting only 1.6% of noncitizens granted withholding-only relief were ever actually removed to an alternative country (citing American Immigration Council & National Immigrant Justice Center, The Difference Between Asylum and Withholding of Removal 7 (Oct. 2020), https://www.americanimmigrationcouncil.org/sites/default/files/research/the_difference_between_asylum_and_withholding_of_removal.pdf)).

These figures—particularly the length of time needed to complete the related administrative proceedings—raise an obvious question. Typically, Congress permits aliens initially placed in removal proceedings to apply for bond (while such proceedings transpire). See 8 U. S. C. §1226(a)(2). That makes sense. A bond hearing does not mean an alien

will run away. Bond is normally granted only if the immigration judge has assurance that the alien will not abscond and is instead "likely to appear for any future proceeding." 8 CFR §§236.1(c)(8), 1236.1(c)(8). And an alien's release from detention during such proceedings may have collateral effects. See Katzmann, When Legal Representation Is Deficient: The Challenge of Immigration Cases for the Courts, 143 Daedalus 37, 43–44 (2014) (describing how those detained during removal proceedings are less likely to achieve the outcomes they seek).

I can understand why Congress might not want to grant a bond hearing to an alien whose circumstances fall within the removal period. That period, after all, should normally be brief. The statute says "90 days." 8 U. S. C. §1231(a)(1)(A). But why would Congress want to deny a bond hearing to individuals who reasonably fear persecution or torture, and who, as a result, face proceedings that may last for many months or years (while their withholding-only proceedings wend their way toward completion)? I can find no satisfactory answer to this question.

B

Does the statutory provision's *language* nonetheless require the majority's result? In my view, it does not. Reread the first seven words of that provision's general rule. They say that the provision's removal rules apply "[*e*]*xcept as otherwise provided in this section.*" §1231(a)(1)(A) (emphasis added). And later in the same section, following that "except clause," the restriction-on-removal provision says that "the Attorney General *may not remove*" an alien who falls within its terms. §1231(b)(3)(A) (emphasis added); see also note following §1231, at 884. Why does that provision, then, not count as what the general statutory rule calls an "except[ion]?"

Read on. Following the "general" terms governing the removal period rule, §1231 says:

**"(B) Beginning of Period**

"The removal period *begins on* the latest of the following:

"(i) *The date the order of removal becomes administratively final.*

"(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

"(iii) If the alien is detained or confined . . . , the date the alien is released from detention or confinement." §1231(a)(1) (emphasis added).

No one here claims that §1231 authorizes detention without a bond hearing *before* the removal period begins. And the most natural reading of the italicized language should lead to the conclusion that the removal period has not yet begun. The removal period does not commence until the administrative proceedings are over, *i.e.,* until "the order of removal" is "administratively final." And the order is not "final" until the immigration judge and the BIA finally determine whether the restriction on removal applies and prohibits removal (unless and until the Government can identify a willing alternative receiving country).

## II
### A

The majority believes we must read the statute differently. It reads the "except clause" as serving only to extend the "length of the removal period," *ante,* at 16–17, not to exempt the removal procedures altogether. In its view, the time during which respondents seek administrative relief from the order of removal due to a reasonable fear of persecution or torture nevertheless remains within the "removal period," which the restriction-on-removal provision simply extends. (And, as I said, the majority assumes that §1231 allows the Government to deny bond hearings during the 90-day "removal period.")

While this is a possible reading, it is not what the statute actually says. The statute begins with the phrase "except as otherwise provided in this section," and it follows that clause with basic operative language, namely, "the Attorney General shall remove the alien." §1231(a)(1)(A). It does not say, "within a period of 90 days *except if this section provides for a longer period.*" The majority's interpretation is an awkward way to read that sentence.

The majority then points to three statutory phrases to which it believes the "except clause" applies. Those phrases, it says, are evidence that the "except clause" simply instructs that "the removal period may be extended" for three reasons. *Ante*, at 3. The first provision, plainly titled "Suspension of period," "extend[s]" the "removal period . . . beyond a period of 90 days" if the alien, for example, fails to seek appropriate travel documents. §1231(a)(1)(C) (boldface omitted). A second provision allows the Government to "detai[n] beyond the removal period" individuals who have committed certain serious crimes or pose "a risk to the community or [are] unlikely to comply with the order of removal." §1231(a)(6). And a third allows the Government to "stay the removal of an alien" if "immediate removal is not practicable or proper" or the alien is "needed to testify" in a prosecution. §§1231(c)(2)(A)(i), (ii).

The third example, however, is beside the point, for it comes equipped with its own bond and supervised released possibility, staying (rather than extending) the removal period. See §1231(c)(2)(C); 8 CFR §241.6(a). The first two examples are unlike the restriction-on-removal provision in that their language simply suggests, not invalidation of the removal order's identified country of removal, but an extension of the removal period beyond 90 days. See 8 U. S. C. §1231(a)(1)(C) ("exten[d] beyond a period of 90 days"); §1231(a)(6) ("detai[n] beyond the removal period"). The restriction-on-removal provision contains no such language. I add that the majority's exceptions, unlike the restriction-

on-removal provision, typically do not entail proceedings that last (and keep the alien in the United States) for many months or years. Nor do they call into question whether the removal order will ultimately be implemented. These inconsistencies suggest the "except clause" does more than merely extend the 90-day limit.

### B

The majority's interpretation of the words "administratively final" is no more convincing. The majority says that these words apply only to the finality of the original removal orders, *i.e.,* the orders issued before respondents left the country and returned, as of the time those orders were first issued. After all, the majority adds, see *ante,* at 9–10, a further subsection of §1231 says that "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, [and] the alien . . . may not apply for any relief under this chapter." §1231(a)(5).

This last mentioned provision, however, is not relevant here. It cannot prevent an alien from seeking what is in effect a modification of, a change in, or a withholding of, the "prior order of removal" for reasons of fear of persecution or torture. After all, §1231(b)(3)(A) says the contrary. Government practice is also to the contrary. See note following §1231, at 884; 8 CFR §§208.31, 241.8(e), 1208.31, 1241.8(e). And all here agree that the aliens are legally entitled to seek that withholding-only relief. See *Fernandez-Vargas*, 548 U. S., at 35, n. 4.

Now consider the temporal problem. The time when the majority says the reinstated removal order became "administratively final" is the time at which the original order of removal became final. But to take the words "administratively final" as referring only to that time would lead to a very peculiar statute. It means that most reinstated removal orders will have become administratively final many

years before the proceedings during which they are rein-
stated. Recall that in most instances the 90-day removal
period begins when the removal order becomes administra-
tively final. If the majority is right, in the case of most re-
spondents, the 90-day removal period began long before the
aliens left the country, let alone returned. Did the 90-day
removal period begin to run at that earlier time? Did it run
and then terminate? Is there now no removal period? Read
as the majority does, the 90-day limit that governs all of
§1231 would not apply at all to aliens in respondents' cir-
cumstances.

For this reason, I believe the better reading of those
words would be to apply them to any removal orders, rein-
stated or not, that are not yet "administratively final." And
here, the orders are not final until the administrative pro-
ceedings (concerning eligibility for withholding-only relief
on account of fear of persecution or torture) are complete.
Cf. *Bennett* v. *Spear*, 520 U. S. 154, 178 (1997) (agency ac-
tion is not "final" until, *inter alia*, all "rights or obligations
have been determined . . . from which legal consequences
will flow" (internal quotation marks omitted)).

\*     \*     \*

In sum, I can find no good reason why Congress would
have wanted categorically to deny bond hearings to those
who, like respondents, seek to have removal withheld or de-
ferred due to a reasonable fear of persecution or torture.
And I do not agree with the majority's reading of the stat-
ute's language as denying them that opportunity. If, as I
believe, §1231 does not apply to the withholding-only relief
proceedings before us, then, as the majority concedes, see
*ante*, at 1, §1226 applies, and grants them bond hearings. I
would apply that provision and afford respondents bond
hearings.

With respect, I dissent.